**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**JORDAN WARMAN, individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**AMERICAN NATIONAL STANDARDS INSTITUTE, a 501(c)(3) organization,**

**Defendant.**

**CIVIL ACTION NO.  15-CV-5486-RA-FM**

**ORAL ARGUMENT REQUESTED**

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS NEW YORK
LABOR LAW CLAIMS**</u>

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................................................... 1

II.     STATEMENT OF FACTS ALLEGED ................................................................... 3

III.    ARGUMENT ............................................................................................................ 4

      A.     Plaintiff Must Plead A Plausible NYLL Claim To Avoid Dismissal ............... 4

      B.     The NYLL Does Not Apply Extraterritorially.................................................. 5

      C.     The Generic Choice Of Law Provision In The Agreement Does Not
            Confer Broad Statutory Rights Under the NYLL .............................................. 8

      D.     ANSI's Operations in New York Do Not Create Statutory Rights Under
            the NYLL for Individuals Across the Country and World ............................. 10

IV.    CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................... 4

*Burnett v. Physicians' Online, Inc.,*
    No. 94-2731, 1997 WL 470136 (S.D.N.Y. Aug. 15, 1997) ......................................... 9, 10

*Goshen v. Mut. Life Ins. Co. of N.Y.,*
    286 A.D.2d 229 (1st Dept. 2001), *aff'd* 98 N.Y.2d 314 (2002) ......................................... 6

*Hammell v. Banque Paribas,*
    No. 90 -4799, 1993 U.S. Dist. LEXIS 14755 (S.D.N.Y. Oct 19, 1993) ........................ 5, 6

*Hart v. Dresdner Kleinwort Wasserstein Sec., LLC,*
    No. 06 -0134, 2006 U.S. Dist. LEXIS 56710 (S.D.N.Y. Aug. 9, 2006) ............................ 7

*Klock v. Lehman Bros. Kuhn Loeb Inc.,*
    584 F. Supp. 210 (S.D.N.Y. 1984) ........................................................................... 8

*Knieriemen v. Bache Halsey Stuart Shields, Inc.,*
    74 A.D.2d 290 (1st Dept. 1980) ........................................................................... 9

*Krock v. Lipsay,*
    97 F.3d 640 (2d Cir. 1996) ........................................................................... 2, 8

*Magnuson v. Newman,*
    No. 10-6211, 2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) .................................... 6, 7, 11

*Manfredonia v. Am. Airlines, Inc.,*
    68 A.D.2d 131 (2d Dep't 1979) ........................................................................... 6

*McKay v. Stewart,*
    313 N.Y.S.2d 545 (2nd Dept. 1970) ........................................................................... 5

*Melia v. Zenhire, Inc.,*
    42 Misc. 3d 1206(A) (Sup. Ct., Erie Cnty. Dec. 11, 2013) ........................................ 10

*O'Neill v. Mermaid Touring Inc.,*
    968 F. Supp. 2d 572 (S.D.N.Y. 2013) ........................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

*Rice v. Scudder Kemper Invs., Inc.*,
    No. 01-7078, 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003),
    aff'd 183 Fed. App'x 147 (2006) ............................................................................. 9

*Turtur v. Rothschild Registry Int'l, Inc.*,
    26 F.3d 304 (2d Cir. 1994) ...................................................................................... 10

**STATUTES**

Fair Labor Standards Act ............................................................................... 1, 5, 12

**OTHER AUTHORITIES**

12 N.Y.C.R.R. § 142 ............................................................................................... 7

Rule 12(b)(6) ..................................................................................................... 1, 4

Defendant American National Standards Institute, Inc. ("ANSI" or "Defendant") submits this Memorandum of Law in support of its Rule 12(b)(6) Motion to Dismiss the New York Labor Law ("NYLL") claims from the First Amended Class Action Complaint ("Complaint") filed by Jordan Warman ("Warman" or "Plaintiff"). This Motion is without prejudice to Plaintiff continuing to pursue his Fair Labor Standards Act ("FLSA") claims on behalf of himself and purportedly on behalf of others he seeks to represent.

## I.   <u>INTRODUCTION</u>

Jordan Warman is a Canadian resident who traveled briefly to Washington D.C., Maryland, and New Jersey to attend "training sessions" offered by ANSI. ANSI ultimately elected not to work with him based on its experience with him at these sessions.

Plaintiff does not live in New York, never attended a training session in New York, and never performed any alleged work for ANSI in New York. Yet, Plaintiff asserts claims against ANSI under the NYLL. Given that his purported minimum wage and overtime claims are timely under the FLSA, and that the FLSA provides for double damages just like the NYLL, there appears to be only one purpose for this bizarre attempt to advance claims under the laws of a foreign state. Specifically, Plaintiff's counsel no doubt believes that the specter of an opt-out class action claim, particularly one in a state with the NYLL's six-year limitation period and with additional wage notice/statement requirements, will increase their leverage to attempt to force ANSI to settle meritless claims.

As explained more fully below, the *New York* Labor Law is designed to protect those who work in *New York*. There is nothing in the NYLL or its regulations or legislative history to suggest that the legislators intended to give people living and working exclusively outside of New York any statutory rights under New York law. If that were the case, New York would be inundated with wage and hour lawsuits brought by employees from states with

1

shorter statutes of limitations and/or without double damages – *i.e.*, every other state. Unquestionably, protecting the entire country's work force from claimed wage violations was not the intent of the New York legislature when they passed the NYLL.

As Plaintiff clearly is not covered by the NYLL for any training he received in other states, ANSI anticipates that Plaintiff will argue that a choice of law provision in an "Assessor Agreement" – a provision that determines which state's law controls questions of contractual interpretation – somehow grants him a full panoply of statutory rights under New York law. However, as explained more fully below, the plain language of the agreement precludes that argument.  The agreement says nothing about the extreme measure of creating a broad array of statutory rights that otherwise do not exist for Plaintiff.  Instead, the agreement clarifies that New York Law *only* applies to the terms of the agreement and, therefore, under binding Second Circuit precedent, any statutory wage claims are necessarily not included.  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (explaining that a contractual choice of law provision does not bind parties with respect to non-contractual causes of action).

ANSI also anticipates from its pre-motion discussion with opposing counsel that Plaintiff will argue that because ANSI has an office and some operations in New York City, it is somehow subject to claims under New York statutory law for workers living and working anywhere else in the country (or world, given that Plaintiff did not even live in the United States).  Plaintiff's theory is frankly absurd.  If statutory rights were bestowed upon workers because their alleged employers maintained offices in particular states, there would be an inexorably high number of lawsuits filed against (for example) California-based companies by workers all around the country, claiming meal and rest penalties, wage statement violations, and any number of other statutory rights specific to California law.  The mere fact that ANSI

maintains offices in New York does not confer statutory protection to individuals who have never even set foot in the state (let alone worked for ANSI in the state).

Accordingly, all of the NYLL claims brought by a *Canadian* resident that attended training sessions in *Washington D.C., Maryland, and New Jersey* must be dismissed because he is not entitled to protection under the *New York* Labor Law.

## II.   STATEMENT OF FACTS ALLEGED

Plaintiff resides in Ontario, Canada.  Complaint ¶ 8.  Plaintiff alleges that in June 2013 he was accepted by ANSI as an "Assessor Trainee." *Id.* ¶11.  According to Plaintiff, ANSI is "a not-for-profit corporation that oversees the creation, promulgation, and use of thousands of norms and guidelines that impact businesses in numerous industries." *Id.* ¶ 9.  Plaintiff alleges that on October 22, 2013 he signed an "Assessor Agreement" with ANSI that provides: "This Agreement shall be governed by the laws of the State of New York, exclusive of New York's conflict of interest rules." *Id.* ¶12.

Plaintiff alleges that after signing the agreement, he attended a "training session" from October 29, 2013 through November 1, 2013 in Washington, D.C., another "training session" from January 21, 2014 through January 23, 2014 in Baltimore, Maryland, and final "training sessions" in May 2014 in New Jersey.  *Id.* ¶ 15.  This was the extent of Plaintiff's interaction with ANSI.  Despite this being training provided at great expense to ANSI that furthered Plaintiff's professional development and marketability for roles well beyond ANSI, Plaintiff alleges that he should have been paid for attending the sessions in Washington, D.C., Maryland, and New Jersey.  *Id.* ¶18.  Plaintiff also appears to claim that ANSI failed to pay him for "spread of hours," failed to keep accurate time records, failed to pay him in the proper pay period, and failed to issue proper notices and wage statements, all in alleged violation of

3

the NYLL.  *Id.* ¶¶ 47-59.  Plaintiff does not allege that he ever worked for ANSI in New York or even set foot in the state.  Complaint, generally.

III.   **ARGUMENT**

    A.   **Plaintiff Must Plead A Plausible NYLL Claim To Avoid Dismissal.**

Federal Rule of Civil Procedure 12(b)(6) grants the Court authority to dismiss an action upon a party's motion where the complaint fails to state a claim upon which relief can be granted.  To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  The plausibility standard requires "more than a sheer possibility" that a defendant has acted unlawfully. *Id*. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted).  In other words, the complaint must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Id*. (internal quotations and citations omitted).

In this case, even accepting as true all the factual allegations set forth by Plaintiff, the Court must dismiss the NYLL claims from the Complaint.  Plaintiff has failed to establish that a NYLL claim is plausible on its face because he did not work or even live in New York and,

Yherefore, he is not entitled to the protection of New York's labor laws.  Accordingly, these claims must be dismissed.[1]

       **B.**       <u>**The NYLL Does Not Apply Extraterritorially.**</u>

Plaintiff's claims for unpaid wages, overtime compensation, and alleged violations of notice and record keeping requirements under the NYLL fail because, as he admits, he did not work in New York during the relevant time period.  *See* Complaint, generally.  The "Statement of Public Policy" found in Article 19 of the NYLL – which includes the minimum wage, overtime, and spread of hours provisions relevant to this case – explains that the NYLL was enacted because "[t]here are persons employed in some occupations *in the state of New York* at wages insufficient to provide adequate maintenance for themselves and their families."  NYLL § 650 (emphasis added).  Clearly, then, it goes without saying that the *New York* Labor Law is designed to protect those who live and work in *New York.  See generally McKay v. Stewart*, 313 N.Y.S.2d 545, 547 (2nd Dept. 1970) (observing that the purpose of Labor Law is to protect rights of residents of New York to wages), *rev'd on other grounds*, 29 N.Y.2d 563 (1971).

In addition to the stated purpose of the NYLL being to protect New York workers, there is nothing in the NYLL evidencing the legislature's intent to apply the statute extraterritorially.  *Hammell v. Banque Paribas*, No. 90 -4799, 1993 U.S. Dist. LEXIS 14755, at *5 (S.D.N.Y. Oct 19, 1993) ("The [NYLL] contains no clear statement of intended extraterritorial effect.").  Where there is no evidence of intent to apply a statute extraterritorially, it is well-settled rule that the presumption is that it does not apply to people

---

[1] Although ANSI does not move to dismiss the FLSA claims at this time, it notes that upon the completion of discovery, it plans to move for summary judgment with respect to those claims.

5

who work outside of the State of New York.  *Magnuson v. Newman*, No. 10-6211, 2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) ("Under New York law, it is a settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it."); *Manfredonia v. Am. Airlines, Inc.*, 68 A.D.2d 131, 137 (2d Dep't 1979) ("New York recognizes the general rule that a statute is presumed to apply only within the State"); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 286 A.D.2d 229 (1st Dept. 2001), *aff'd* 98 N.Y.2d 314 (2002) (same).

Given the public policy behind the NYLL – to protect workers in *New York* – and the presumption against extraterritorial application, courts repeatedly have dismissed claims by out-of-state workers alleging claims under the NYLL.  For example, in *Hammell*, this Court rejected an attempt by a former employee who had transferred from New York to Tokyo to maintain a claim under NYLL § 198-c based on a bonus allegedly earned.  1993 U.S. Dist. LEXIS 14755, at *5.  The Court was asked in *Hammell* to decide whether the provisions of the NYLL could be extended extraterritorially to compel an award of attorney's fees.  After reviewing the pertinent law, Judge Martin held that it could not.  The Court explained that the "question of extraterritoriality is in the first instance one for the legislature" and that "[l]egislatures operate upon the presumption of territorial limitation, and current doctrine calls for a clear statement that a statute applies overseas."  *Id.* (citations omitted).  The NYLL "contains no clear statement of intended extraterritorial effect" and thus the claims were dismissed because "[n]othing in the statute suggests that legislators intended to give persons who were employed outside New York the right to come to New York to sue their employers [. . . ]."  *Id.*  Additionally, the law at issue in *Hammell*, NYLL § 198, appears in Article 6 of the NYLL, which the Court explained is "clearly aimed at regulating the conduct of actors

6

within the state's boundaries.  The purpose of this area of the labor law is clearly to protect workers laboring in New York." *Id.*  Here, too, Plaintiff has alleged violations of the NYLL §§ 190, 191, 195, and 198 – all of which appear in Article 6 of the NYLL.  *See* Complaint, generally.

As a second example, in *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2013), this Court granted summary judgment to the defendant on plaintiff's NYLL overtime claims – for work performed outside of New York – after recognizing that the NYLL "contain[s] no clear statement of intended extraterritorial effect . . . ."  Specifically, Judge Gardephe determined that nothing in 12 N.Y.C.R.R. § 142-2.2 or NYLL § 198 (the very same provisions upon which Plaintiff relies) "suggests that the legislators intended to give persons who were outside New York the right to come to New York and sue their employers." *Id.*  Judge Gardephe explained, "[t]he crucial issue is where the employee is 'laboring,'" and it is not even relevant where the employee lives.  *Id.*  Here, Plaintiff certainly did not work in New York and did not even live in this country, let alone the state of New York.

Similarly, in *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06 -0134, 2006 U.S. Dist. LEXIS 56710 (S.D.N.Y. Aug. 9, 2006), a plaintiff living and working in London sued her employer – an investment bank with offices in different cities around the world – in New York, alleging violations of the NYLL.  Even though the plaintiff previously worked in New York, her supervisor remained in New York, she traveled to New York to work for four weeks per year, and she serviced clients in New York – circumstances entirely unlike this case – Judge Batts nevertheless found that the NYLL did not apply extraterritorially and dismissed her claims.  *See also Magnuson*, 2013 WL 5380387 (generally) (dismissing NYLL

claims where work was performed outside of New York because Judge Furman found that "[i]n combination with the presumption against extraterritoriality, it follows that the [NYLL] does not apply to people who work outside of the State of New York").

The NYLL was enacted to protect workers in New York, and there is nothing to evidence that the Legislature intended for the NYLL to apply extraterritorially.  Accordingly, Plaintiff, a Canadian resident who traveled briefly to Washington, D.C., Maryland, and New Jersey for alleged work, cannot assert claims under the NYLL.

## C.   The Generic Choice Of Law Provision In The Agreement Does Not Confer Broad Statutory Rights Under the NYLL.

ANSI anticipates based on discussions with his counsel that Plaintiff will argue that the choice of law provision in the "Assessor Agreement" he signed in October 2013 somehow bestows upon him all New York statutory rights.  In New York, however, for a choice-of-law provision to include statutory claims (such as wage claims arising under NYLL) the choice-of-law provision must be written broadly.  Provisions like the one in the "Assessor Agreement" that merely state that "*[t]his agreement* shall be governed by the laws of the State of New York" (emphasis added) are consistently found to be too narrow to encompass statutory or tort claims.  *Krock*, 97 F.3d at 645 ("Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties.").  Pursuant to binding Second Circuit precedent, supported by guidance from the First Department on the issue of New York law, because the choice of law provision in the Assessor Agreement is limited to contractual claims arising under the Agreement, the statutory claims raised by Plaintiff are not covered by the choice of law provision and must be dismissed.  *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F. Supp. 210,

215 (S.D.N.Y. 1984) ("[I]n New York . . . a contractual choice of law provision governs only a cause of action sounding in contract."); *Knieriemen v. Bache Halsey Stuart Shields, Inc.*, 74 A.D.2d 290, 296 (1st Dept. 1980), appeals dismissed 50 N.Y.2d 1021 (1980) (declining to apply to extra-contractual causes of action a choice of law provision stating that "[t]his contract shall be governed by the laws of the State of New York").

In *Rice v. Scudder Kemper Invs., Inc.*, No. 01-7078, 2003 WL 21961010, at *4 (S.D.N.Y. Aug. 14, 2003), aff'd 183 Fed. App'x 147 (2006), Judge Carter explained that "[f]or parties to be bound by New York law with regard to non-contractual causes of action [*i.e.*, alleged violations of the NYLL], the choice-of-law provision would have had to include *much broader language*, indicating that *any controversy 'arising out of or relating to' the agreement* would be governed by the laws of New York." (emphasis added). Accordingly, *Rice* refused to apply the New York Human Rights Law to a non-resident plaintiff who did not work in New York where the choice-of-law provision in the plaintiff's employment contract stated that "the validity, interpretation, construction, and performance of *this Agreement* shall be governed by the law of the state of New York." *Id.* at *4 (emphasis added). The decision explained that the language of the choice-of-law provision was not sufficiently broad as to encompass all disputes between the parties, because "it is settled New York law" that the provision did not create statutory rights. *Id.* (citing *Krock*, 97 F.3d at 645; *Burnett v. Physicians' Online, Inc.*, No. 94-2731, 1997 WL 470136, *12 (S.D.N.Y. Aug. 15, 1997)).

In *Burnett*, Chief Judge Griesa similarly found that a New York choice of law provision in a Stockholders' Agreement stating that "*[t]his Agreement* shall be governed and construed in accordance with the law of the State of New York" would not bar plaintiffs from

bringing a cause of action for gender discrimination under California law.  This Court explained that because the gender discrimination claim arose out of state *statutory law*, the choice of law provision in the Stockholders' Agreement – which governed disputes arising *out of the contract* – did not bar the gender discrimination claim under California law. *Id.* at * 12.

      As a final example, in *Melia v. Zenhire, Inc.*, 42 Misc. 3d 1206(A) (Sup. Ct., Erie Cnty. Dec. 11, 2013), the choice of law provision in the agreement at issue stated: "This Agreement shall be . . . governed and construed in accordance with the laws of the State of New York." *Id.*  When the plaintiff asserted statutory wage claims, the court determined that the generic choice of law provision did *not* create a statutory wage claim. *Id.* at *3-4.

      For the Assessor Agreement to create new statutory claims for Plaintiff under the NYLL that otherwise would not exist, the choice of law provision requires much broader language, explaining that *any* disagreement "arising out of or relating to" the parties' entire relationship pursuant to the Agreement would be governed by New York law.  *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994) (finding New York choice of law provision covered common law fraud claim because parties agreed to be bound by choice of law provision that covers *any* controversy "arising out of or relating to" the agreement.).  There is no such language here because ANSI did not choose to draft its agreement in a manner to create New York statutory rights for individuals across the country and (in Plaintiff's case) the world.  Accordingly, the NYLL claims should be dismissed.

      **D.**    **ANSI's Operations in New York Do Not Create Statutory Rights Under the NYLL for Individuals Across the Country and World.**

      Finally, ANSI anticipates from discussions with his counsel that Plaintiff will argue that because ANSI has offices in New York City, he is entitled to protection under the NYLL

regardless of where he lives or works.  If statutory rights were bestowed upon workers because their employers maintained offices or were based in any given state, New York courts would be overrun with wage and hour claims by plaintiffs who had worked in any other state seeking to avail themselves of the six year statute of limitations under the NYLL and other state-specific claims and penalties under the NYLL.  The same certainly is true of companies based in California with workers throughout the nation.  The fact that this has not happened is a testament to the untenable nature of Plaintiff's scheme.

However, Plaintiff is not the first non-resident to attempt to avail himself of New York's generous six-year limitations period.  In *Magnuson*, out of state workers brought claims under the NYLL because their employer was incorporated in New York.  2014 WL 5380387, * at 5.  The Court gave this argument no credence and instead dismissed the claims because the NYLL was enacted to protect workers in New York and, as discussed in detail above, there was no evidence of the Legislature's intent to apply the NYLL extraterritorially. *Id.*  The mere fact that ANSI maintains offices and allegedly develops unspecified policies in New York (Complaint ¶ 9) does not confer statutory rights to individuals who have never even set foot in the state (let alone allegedly worked for ANSI in New York).

**IV.    <u>CONCLUSION</u>**

Plaintiff, a Canadian resident who attended brief "training sessions" in Washington, D.C., Maryland, and New Jersey has failed to state a claim to relief under the NYLL because the NYLL does not apply extraterritorially.  Neither the generic choice of law provision in the "Assessor Agreement" nor ANSI's operations in New York change that conclusion. Accordingly, Plaintiff's NYLL claims should be dismissed in their entirety, with prejudice, for failure to state a claim, together with such other and further relief as this Court deems just, proper and equitable.  This will in no way preclude Plaintiff from continuing to pursue his

FLSA claim on behalf of himself and purportedly on behalf of others he believes to be similarly situated.  Nor will it preclude anyone who allegedly worked for ANSI in New York from pursuing NYLL remedies in any action.


Dated: October 9, 2015                       Respectfully submitted,

                                             MORGAN, LEWIS & BOCKIUS LLP

                                             By: /s/ *Michael J. Puma*
                                                  Michael J. Puma

                                             1701 Market Street
                                             Philadelphia, PA 19103
                                             Tel: 215.963.5305
                                             mpuma@morganlewis.com

                                             Ashley Hale
                                             101 Park Avenue
                                             New York, NY 10178
                                             Tel: (212) 309-6000
                                             ahale@morganlewis.com

                                             Attorneys for Defendant