**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JORDAN WARMAN, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>       v.<br><br>AMERICAN NATIONAL STANDARDS INSTITUTE, a 501(c)(3) organization,<br><br>       Defendant. | **CASE NO.:  1:15-cv-05486-RA-FM**<br><br>**CLASS ACTION COMPLAINT**<br><br>**PLAINTIFF JORDAN WARMAN'S MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND NOTICE PURSUANT TO 29 U.S.C. § 216(b)** |

{00274389  }

## I.     INTRODUCTION

Conditional certification of Plaintiff Jordan Warman's Fair Labor Standards Act ("FLSA") claim is warranted.  Defendant American National Standards Institute's ("ANSI") classified its Assessor Trainees, Assessor Candidates, Assessors, and all other employees in similar positions (collectively, "Assessors") as independent contractors.  This classification was unjustified because, among other things, ANSI specifically trained Assessors on how to perform their jobs, ANSI controlled how and when Assessors' worked, and ANSI used Assessors to perform work that was an integral part of ANSI's business.  Because ANSI classified Assessors as independent contractors, ANSI engaged in a company-wide practice of requiring Assessors to attend multiple training sessions without paying them at least minimum wage for the time spent at training or for any work contributed during the training.  As such Warman seeks condition certification of a collective action defined as:

> All persons residing in the United States who American National Standards Institute required to attend training, either New Assessor Training, Annual Assessor training, onsite assessment observation training or any other type of training for training purposes and were not compensated for that time at any point after July 13, 2012.

Warman satisfies the lenient standard for the FLSA certification "notice" stage by submitting a detailed declaration, along with ANSI's own corporate documents.  Thus, Warman requests that the Court (1) conditionally certify this case as a collective action under 29 U.S.C. § 216(b); (2) order ANSI to produce the names and other relevant information of its current and former Assessors; and (3) authorize and order notice of the collective action be sent to ANSI's current and former Assessors.  *See* 29 U.S.C. § 216(b); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

## II.    STATEMENT OF FACTS

ANSI is a private not-for-profit corporation that administers and coordinates the U.S. voluntary standardization and conformity assessment system. (*Complaint* at ¶ 9.) Warman applied to ANSI for an Assessor position of Assessor. (Warman Decl., ¶ 2.) ANSI accepted Warman as an "Assessor Trainee" and required him to execute a standardized Assessor Agreement. (Warman Decl., ¶ 3, Ex. 1).  The Assessor Agreement stated that Warman — which it referred to as "Consultant" — was classified as independent contractors:

> **7    Independent Contractor**
>
> The parties agree that the Consultant is an independent contractor and nothing contained in this Agreement is intended to create any other relationship…. In no event shall the Consultant be deemed to be an employee of ANSI. (*Id.*, Ex. 1, ¶ 7.)

The Assessor Agreement further stated that Warman could only perform tasks assigned by ANSI.  It also stated that Warman had to perform assessing and consulting services in conformance with ANSI's policies and procedures and during the time periods specified by ANSI.  It further stated that ANSI dictated Warman's daily pay rate and would reimburse Warman for certain travel expenses or other expenses directly related to an assessment.  The Assessor Agreement also required Warman to submit invoices to get paid and dictated how he needed to submit the invoices.  It also stated that Warman was covered under ANSI liability insurance policies.  (Warman Decl., ¶ 3 and Ex. 1, ¶¶ 1, 2, 7.)

ANSI requires all Assessors to execute the same or similar Assessor Agreement and classifies all Assessors as independent contractors.  (Warman Decl., ¶ 4.)  But that classification is wrong because, among other things: 1) ANSI controls the policies, procedures, and time frames for Assessors to complete their work; 2) Assessors do not have an opportunity for profit or loss for any of the work performed on ANSI's behalf, particularly since ANSI sets a daily pay

rate; 3) Assessors' work is an integral part of ANSI's business; 4) Assessors have to complete work during the time frames assigned by ANSI, not at their convenience; 5) ANSI reimburses Assessors for travel expenses; 6) Assessors are covered under ANSI's liability insurance; and 7) ANSI specifically trains all Assessors on how to perform their jobs. (Warman Decl., ¶ 5, Ex. 1, ¶¶ 1, 2, 7.)

As for training, ANSI requires all trainees to participate in and successfully complete in-class training regarding the accreditation process. (Warman Decl., ¶¶ 6-7 and Exs. 5-12.)  After completing the initial in-class training requirement, ANSI requires all trainees to complete in-field training in which they participate in and observe an on-site assessment.  (*Id.*, ¶ 8 and Ex. 13.)  ANSI also requires trainees and all certified Assessors to attend annual assessor training meetings.  (*Id.,* ¶ 9 and Exs. 13-14.)

Warman, for example, attended a candidate training session held in Washington, D.C. from Tuesday, October 29, 2013 to Friday, November 1, 2013.  He also attended ANSI's annual meeting held in Baltimore, Maryland from January 21, 2014 to January 23, 2014.  To Warman's surprise, the annual assessor meeting was a working group meeting during which Assessors, including trainees, worked to arrive at common interpretations for newly introduced standards. In fact, a week after the meeting, ANSI circulated draft minutes to all Assessors, including trainees, and asked everyone to review and submit suggested changes to the proposed standard interpretations. (Warman Decl., ¶ 6.)  Further, Warman participated in and observed a 2-day onsite assessment in New Jersey in May 2014. (Warman Decl., ¶ 6.)

ANSI refers to its newly hired Assessors as "Assessor Trainees" or "Assessor Candidates." Once trainees or candidates successfully complete ANSI's training program, they become "certified" Assessors and have titles such as Assessor, Lead Assessor, Technical

Assessor, or Consultant.  Despite these titles, all Assessors (whether in training or certified) are all classified as independent contractors and required to attend training.  (Warman Decl., ¶ 10.) Moreover, ANSI does not compensate Assessors at least minimum wage for any time associated with traveling to, preparing for, or attending mandatory training sessions or for the work they contributed during the training. (Warman Decl., ¶ 11.)

## III.    STANDARD FOR CONDITIONAL CERTIFICATION

The Second Circuit has approved a two-step process for conditionally certifying a collective action pursuant to § 216(b) of the FLSA.  *See, e.g., Myers v. Hertz Com.,* 624 F.3d 537, 554-55 (2d Cir. 2010). At the first step, the Court determines whether the potential opt-in plaintiffs "may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id*. at 555. Plaintiffs' burden at this stage is "minimal."  *See Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  They need only "mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Hoffmann v. Sbarro, Inc*., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  Plaintiffs must show "a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.'" *Id*. at 262.

At the second step, once the potential plaintiffs have opted in and discovery is finished, courts perform a more rigorous analysis to determine whether the new plaintiffs are in fact similarly situated to the original plaintiffs.  *See Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("After discovery, courts typically engage in a 'second tier' of analysis to determine on a full record-and under a more stringent standard —whether the additional plaintiffs are in fact similarly situated.").  At that

stage, the collective action may be de-certified if it has been shown that the new plaintiffs are not similarly situated to the original, named plaintiffs.  *See Myers*, 624 F.3d at 555.

The required "modest factual showing" is a low standard of proof because the purpose of the first stage is only to determine if similarly situated plaintiffs exist. *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). This burden is "minimal. . . , in part, because 'the determination that the parties are similarly situated is merely a preliminary one' and may be modified or reversed at the second stage certification stage." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 368 (S.D.N.Y. 2007). Thus, "[a]t this procedural stage, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'"  *Kassman v. KPMG LLC,* 2014 WL 3298884 at *5 (S.D.N.Y. July 8, 2014) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). "The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated' . . . with respect to their allegations that the law has been violated."  *Id*. at *6 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

This motion concerns only the first step – a modest factual showing that the Assessors are victims of a common policy or plan that violates that law.

IV.    **WARMAN'S SUBSTANTIAL ALLEGATIONS, DECLARATIVE STATEMENTS, AND COMPANY DOCUMENTS DEMONSTRATE THAT ANSI ASSESSORS ARE SIMILARLY SITUATED**

ANSI classifies all Assessors — whether a Lead Assessor, Technical Assessor, Assessor, Consultant, Assessor Trainee or Assessor Candidate — as independent contractors, as shown by ANSI's standard Assessor Agreement and example job postings.  (Warman Decl., ¶¶ 2-5, Exs. 1-4.)   Assessors, however, should be classified as employees because, among other things: 1)

ANSI controls the policies, procedures, and time frames for Assessors to complete their work; 2) Assessors do not have an opportunity for profit or loss in doing work for ANSI because ANSI sets a daily pay rate; 3) Assessors' work is an integral part of ANSI's business; 4) Assessors have to complete work during the time frames assigned by ANSI, not at their convenience; 5) ANSI reimburses Assessors for travel expenses; and 6) Assessors are covered under ANSI's liability insurance. (Warman Decl., ¶¶ 3, 5.)  Plus, ANSI specifically trains Assessors on how to perform their jobs and requires all Assessors to participate in mandatory training sessions. (Warman Decl., ¶¶ 5-7 and Exs. 5-14.)  ANSI also uniformly requires all Assessors to attend mandatory training sessions.  (*Id.*)  And ANSI uniformly does not compensate Assessors for any time spent at these training sessions or for any work contributed during the training. (Warman Decl., ¶ 11.)

Regardless of titles, all Assessors — whether a Lead Assessor, Technical Assessor, Assessor, Consultant, Assessor Trainee, Assessor Candidate, or some other variation — are all subject to the same policy of being classified as an independent contractor, required to attend training, and not compensated for the training time.  Warman does not need to show that his position is identical to the positions held by putative class members, but only that he held a similar position. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).  Any circumstances that may be personal to each Assessor go to the individual calculation of damages, and does not pertain to the similar theory of liability and recovery that binds the Assessors. *See, e.g. Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351, 353 (S.D.N.Y. 1999).  As such, Warman and the Assessors he seeks to represent are similarly situated.

Warman met his burden to conditionally certify a FLSA collective action by presenting evidence of his personal experience and observations, his conversations with other Assessors,

statements made by ANSI via email exchanges with Warman, and ANSI's own documents, including its Assessor Agreement.  At the notice stage, this type of evidence is sufficient to establish a factual nexus between Warman and the other Assessors.  Indeed, in *Sanchez et al. v. El Rancho Sports Bar Corp*, et al., No. 13-cv-5119-RA (S.D.N.Y. May 13, 2014), this Court granted conditional FLSA certification based upon similar evidence, *i.e.*, substantial allegations in the complaint, the named plaintiff's supporting declaration, and company documents.

In *El Rancho Sports Bar,* plaintiffs worked at defendants' restaurant as waitresses, but brought a collective action on behalf of all waitresses and dancers, alleging that defendants failed to compensate them for all hours worked.  Plaintiffs asserted in their own declarations that: (1) they and all of the waitresses and dancers were paid a flat daily salary regardless of the number of hours actually worked; (2) the waitresses and dancers earned less than the federal minimum wage; (3) defendants did not track work hours, and (4) the waitresses regularly worked over 40-hour weeks.  *Id.* at *3-4.  Plaintiffs also described in their declarations how defendants' reduced waitresses' and dancers' wages if they did not earn "tickets" each night by persuading customers to buy them drinks and that defendants deducted $15.00 per day from wages if employees arrived late. *Id.* at *4.  Considering those declarative statements, this Court found that if plaintiffs' allegations were true, then the potential opt-in plaintiffs all received less than the federal minimum wage and experienced unlawful wage deductions. *Id.* This Court further found that plaintiffs' declarative statements were based on plaintiffs' personal experiences and observations, their conversations with other waitresses and dancers, and statements allegedly made by defendants.  *Id.*  This Court thus held that these declarative statements alone, at the notice state, were sufficient to establish a factual nexus between plaintiffs and the other waitresses and dancers who worked at defendants' restaurant. *Id*.; *see also, e.g., Hemandez v.*

*Bare Burger Dio Inc.,* No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25,

2013) (observing that "courts in this circuit have routinely granted conditional collective

certification based solely on the personal observations of one plaintiffs affidavit"); *Fasanelli v.*

*Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (granting conditional

certification where "servers, bartenders, runners and bussers [were] subject to a common time-

keeping practice" and noting that "[c]onditional...certification is appropriate...where all putative

[collective action] members are employees of the same restaurant enterprise and allege the same

types of FLSA violations").

  This Court likewise should grant conditional certification here and conditionally certify a

collective action consisting of:

> All persons who American National Standards Institute required to
> attend its New Assessor Training, Annual Assessor Training, or
> any other type of training, including onsite assessment observation
> training, to receive training, at any time from July 13, 2012 to
> present, and were not compensated for that time.  (*See* Complaint ¶
> 20.A.)

**V. THE COURT SHOULD AUTHORIZE NOTICE TO PUTATIVE COLLECTIVE ACTION MEMBERS**

  Upon conditional certification, putative collective action members are entitled to

"accurate and timely notice concerning the pendency of the collective action, so that they can

make informed decisions as to whether to participate." *Hoffmann-La Roche, Inc.*, 493 U.S. at

170.  The Court has the authority to order notice to putative collective action members.  *Id.* at

170-71.

**  a. The Court Should Order ANSI To Produce The Contact Information For Putative Collective Action Members**

  To enable Warman to timely notify the putative collective class members, Warman

requests that the Court order ANSI to produce a list of the names of all Assessor Trainees,

Assessor Candidates, Assessors, Consultants, or any other similar positions that were not compensated for training time any time since April 23, 2009.  In addition to the names, ANSI should be ordered to produce the last known addresses, telephone numbers, dates of employment, locations of employment, and employee identification numbers. *See Graham v. Overland Solutions, Inc.*, No. 10-CV-672 BEN (BLM), 2011 U.S. Dist. LEXIS 49308, at 8-9 (S.D. Cal. May 9, 2011) (Benitez, J.) (approving the plaintiff's request for the same information about putative collective action members); *see also Ack v. Manhattan Beer Distribs., Inc.,* No. 11 Civ. 5582 (CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012); *Jacob v. Duane Reade, Inc.,* No. 11 Civ. 0160 (JPO), 2012 WL 260230, at *9-10 (S.D.N.Y. Jan. 27, 2012); *Pippins v. KPMG LLP,* No. 11 Civ. 0377 (CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012). ANSI should be ordered to produce this information to Plaintiff within 10 calendar days from entry of the Court's order.

### b.      The Proposed Notice Is Reasonable and Adequate

The proposed Notice and Consent to Join form, attached to the Attorney Transmittal Declaration as "Exhibit 1", are reasonable and adequate.  The Notice has a neutral tone, expressly states that the Court has not ruled on the merits of the case, expressly informs the employees of the potential consequences of joining the lawsuit (*i.e.*, being bound by court decisions and being asked to partake in discovery including depositions, among other things), and provides contact information for Warman's counsel.  Warman proposes the following timeline for sending the notice to putative collective action members:

- Defendant to produce to Plaintiff in Microsoft Excel or comparable format, within **10 calendar days** of the entry of this Order, the name, last known address, telephone number, dates of employment, location of employment, and employee identification

number of all individuals in the collective action known as of the date of this Order (the "Collective Action List").

- Plaintiff shall mail copies of the Notices and Consent to Join forms to all individuals on the Collective Action List within **10 calendar days** of receipt of the Collective Action List.

- Plaintiff shall mail a reminder postcard to individuals who have not returned the Consent to Join forms within **20 calendar days** after the date of mailing of the Notices.

- The collective action members shall be permitted to submit Consent to Join forms until **40 calendar days** after the date of mailing of the Notices. The Consent to Join form must be postmarked if submitted by mail, and received if submitted by email or fax, within **40 calendar days** from the date of the mailing of the Notices.

## VI.    CONCLUSION

For the foregoing reasons, Warman respectfully requests that the Court (1) conditionally certify the proposed FLSA collective action; (2) order ANSI to produce the requested information for putative collective action members; and (3) direct the dissemination of notice of the pendency of this collective action, as set forth above.

Dated:  November 4, 2015                      Respectfully Submitted,

                                              **AMARTIN LAW, PC**
                                               */s/ Alisa A. Martin*
                                              ALISA A. MARTIN
                                              *alisa@amartinlaw.com*
                                              600 West Broadway, Suite 700
                                              San Diego, CA 92101
                                              Telephone:  (619) 308-6880
                                              Facsimile:  (619) 308-6881

                                              **FINKELSTEIN, BLANKINSHIP,**
                                              **FREI-PEARSON & GARBER LLP**
                                              TODD S. GARBER
                                              *tgarber@fbfglaw.com*
                                              1311 Mamaroneck Ave., Suite 220
                                              White Plains, NY 10605

Telephone: (914) 298-3283
Facsimile: (914) 824-1561

**SAN DIEGO COUNTY LAW OFFICES**
TRAVIS K. JANG BUSBY
*tjbusby@sdlawoffices.com*
2173 Salk Avenue, Suite 250
Carlsbad, California 92011
Telephone: (760) 206-3566
Facsimile:  (760) 579-7319

*Attorneys for Plaintiff and the Class*

{00274389  }                                    11