**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JORDAN WARMAN, individually and on
behalf of all others similarly situated,

          Plaintiff,

   v.

AMERICAN NATIONAL STANDARDS
INSTITUTE, a 501(c)(3) organization,

          Defendant.

**CIVIL ACTION NO.  15-CV-5486-RA-FM**

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS NEW YORK LABOR LAW CLAIMS

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT ..........................................................................................................2

    A.    The NYLL Does Not Apply Extraterritorially ................................................2

    B.    The Generic Choice Of Law Provision In The Agreement Does Not
           Confer Broad Statutory Rights Under the NYLL...............................................5

    C.    ANSI's Operations in New York Do Not Create Statutory Rights Under
           the NYLL for Individuals Across the Country and Around the World............8

III.   CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alter v. Bogoricin*,
    1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 4, 1997).......................................................9

*Amusement Industry v. Stern*,
    693 F. Supp. 2d 327 (S.D.N.Y. 2010) ..............................................................................4

*Burnett v. Physicians' Online, Inc.*,
    1997 WL 470136 (S.D.N.Y. Aug. 15, 1997) ....................................................................6

*Butvin v. Doubleclick, Inc.*,
    2001 U.S. Dist. LEXIS 2318 (S.D.N.Y. Mar. 5, 2001)....................................................7

*Clark v. Kitt*,
    2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014) ..................................................................2

*Cohain v. Klimley*,
    2010 U.S. Dist. LEXIS 98870 (S.D.N.Y. Sept. 20, 2010) .............................................4, 5

*Fried v. Seippel*,
    80 N.Y.2d 32 (1992)...........................................................................................................5

*Hammell v. Banque Paribas*,
    1993 U.S. Dist. LEXIS 14755 (S.D.N.Y. Oct 19, 1993)................................................2, 3

*Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*,
    2006 U.S. Dist. LEXIS 56710 (S.D.N.Y. Aug. 9, 2006)....................................................3

*Klock v. Lehman Bros. Kuhn Loeb Inc.*,
    584 F. Supp. 210 (S.D.N.Y. 1984) ...............................................................................6, 7

*Knieriemen v. Bache Halsey Stuart Shields, Inc.*,
    74 A.D.2d 290 (1st Dept. 1980) ........................................................................................6

*Magnuson v. Newman*,
    2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) ..................................................................2

*McKay v. Stewart*,
    313 N.Y.S.2d 545 (2nd Dept. 1970), *rev'd on other grounds*, 29 N.Y.2d
    563 (1971) ...........................................................................................................................2

*Melia v. Zenhire, Inc.*,
    42 Misc. 3d 1206 (Sup. Ct., Erie Cnty. Dec. 11, 2013).....................................................6

# TABLE OF AUTHORITIES

**Page(s)**

*O'Neill v. Mermaid Touring Inc.*,
    968 F. Supp. 2d 572 (S.D.N.Y. 2013) ................................................................. 3

*Rice v. Scudder Kemper Invs., Inc.*,
    2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003),
    *aff'd* 183 F. App'x 147 (2006) ............................................................................. 6

*Tehran-Berkeley Civil & Envtl. Engs. v. Tippetts-Abbett-McCarthy-Stratton*,
    888 F.2d 239 (2d Cir. 1989) ......................................................................... 9, 10

*Torain v. Clear Channel Broad., Inc.*,
    651 F. Supp. 2d 125 (S.D.N.Y. 2009) ................................................................. 7

*Wright v. Ernst & Young, LLP*,
    152 F. 3d 169 (2d Cir. 1998) .............................................................................. 2

**I.      INTRODUCTION**

ANSI demonstrated in its opening Memorandum that the *New York* Labor Law is designed to protect those who work in *New York*.  There is nothing in the NYLL, its regulations, or its legislative history to suggest that the legislators intended to give people living and working exclusively *outside* of New York any statutory rights under New York law.  As ANSI anticipated, Plaintiff has argued in his Memorandum of Law in Opposition ("Opposition") that a choice of law provision in an "Assessor Agreement" – a provision that determines which state's law controls questions of contractual interpretation – somehow grants him a full panoply of statutory rights under New York law.  However, neither the choice of law provision nor the fact that ANSI maintains an office in New York subjects it to claims under New York statutory law for workers living and working anywhere else in the world.  As explained below, Plaintiff's attempts to save his peculiar claims by claiming this Court must conduct an "interest analysis" fail, as Plaintiff has misinterpreted the doctrine and its applicability to this case.  And Plaintiff's argument that ANSI has somehow "impliedly consented" to allowing him to assert claims under the NYLL is not based on fact or law.

The arguments espoused by Plaintiff in his Opposition confirm that he and his counsel have asserted NYLL claims because they believe that the threat of an opt-out class action claim, particularly one in a state with the NYLL's six-year limitation period and with additional wage notice/statement requirements, will increase their leverage to attempt to force ANSI to settle meritless claims.  There can be no other explanation for asserting claims against ANSI under the NYLL despite the fact that Plaintiff is a Canadian resident, never set foot in New York, and only had contact with ANSI was when he traveled briefly to Washington D.C., Maryland, and New Jersey to attend "training sessions" offered by ANSI.

1

For the reasons set forth below and in the opening Memorandum, all of the NYLL claims brought by a *Canadian* resident that attended training sessions in *Washington D.C., Maryland, and New Jersey* must be dismissed because he is not entitled to protection under the *New York* Labor Law.   Plaintiff remains free to continue to pursue his Fair Labor Standards Act ("FLSA") claim for himself and purportedly on behalf of others for the same minimum wage, overtime compensation, and liquidated damages.

## II.   ARGUMENT[1]

### A.   The NYLL Does Not Apply Extraterritorially.

Plaintiff's claims for unpaid wages, overtime, and alleged violations of notice and record keeping requirements under the NYLL fail because, as he admits, he did not live or work in New York.   *See* Complaint, generally.   The specifically stated purpose of the NYLL is to protect *New York* workers (*see* NYLL § 650; *McKay v. Stewart*, 313 N.Y.S.2d 545, 547 (2nd Dept. 1970), *rev'd on other grounds*, 29 N.Y.2d 563 (1971)) and there is nothing in the NYLL evidencing the Legislature's intent to apply the statute extraterritorially.   *Hammell v. Banque Paribas*, 1993 U.S. Dist. LEXIS 14755, at *5 (S.D.N.Y. Oct 19, 1993) ("The [NYLL] contains no clear statement of intended extraterritorial effect.").

Where, as here, there is no evidence of intent to apply a statute extraterritorially, it is presumed not to apply to people who work outside of the State of New York.   *Magnuson v.*

---

[1]  As an initial matter, the Court should disregard the Declaration of Jordan Warman (Dkt. #31).  To the extent there are pleading deficiencies in Plaintiff's Amended Complaint, Warman cannot cure these defects by merely asserting new allegations in his opposition brief or in a supporting affidavit.  *See Wright v. Ernst & Young, LLP*, 152 F. 3d 169, 178 (2d Cir. 1998) (dismissing plaintiff's claims for failure to state a claim because, *inter alia*, a party may not amend its complaint by alleging new facts in its brief in opposition to a motion to dismiss); *Clark v. Kitt*, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014) (granting defendant's motion to dismiss and refusing to consider the declaration of plaintiff's attorney which introduced new facts not asserted in the pleadings and new legal theories not put forth in the opposition brief).  Furthermore, Plaintiff is mistaken that he can "easily amend his complaint" to fix any deficiencies.  Pl's Opp. at 8.  Since Warman elected not to amend his complaint after ANSI filed its Motion to Dismiss, under Your Honor's Individual Rules & Practices in Civil Cases at Rule 4.C, "no further opportunity to amend to cure the deficiency raised in [ANSI's] motion will be granted."  Any request for leave to amend, therefore, should be denied, particularly given that Plaintiff already amended once.

*Newman*, 2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013).  Accordingly, courts in the Second Circuit have repeatedly dismissed claims by out-of-state workers alleging claims under the NYLL.  *See Hammell*, 1993 U.S. Dist. LEXIS 14755, at *5 (dismissing plaintiff's NYLL claims, where plaintiff had transferred to Tokyo, because the NYLL is "clearly aimed at regulating the conduct of actors within the state's boundaries"); *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2013) (dismissing NYLL overtime claims – for work performed outside of New York – given that the NYLL "contain[s] no clear statement of intended extraterritorial effect . . . . [and nothing] suggests that the legislators intended to give persons who were outside New York the right to come to New York and sue their employers."); *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, 2006 U.S. Dist. LEXIS 56710 (S.D.N.Y. Aug. 9, 2006) (dismissing NYLL claims of employee living and working in London for New York bank).[2]  *See also* ANSI's opening Memorandum of Law at 5-8.

Plaintiff has utterly failed to rebut ANSI's argument that the NYLL does not apply extraterritorially.  Rather, presumably because he cannot directly make that argument, Plaintiff relies on misdirection.  The Opposition offers the misguided argument that the Court should conduct an "interest analysis" to determine whether Plaintiff is subject to the NYLL.  Plaintiff has seriously confused the application of an interest analysis – conducted when a party asserts *common law claims* that have some relationship to two different jurisdictions where the party has contacts and thus a choice-of-law analysis arises – with the prohibition on the extraterritorial application of a state's *statutory laws*.  And, of course, Plaintiff does not

---

[2]  Plaintiff's attempts to distinguish these cases because the employees were located in different states and countries than where he was located misses the mark.  Pl's Opp. at 16-18.  Simple logic and common sense dictates that it matters not in which non-New York location an employee is working.  What matters is that they are not working (or living for that matter) in New York and, therefore, they are not entitled to the protections of the New York Labor Law.  In fact, in every case cited by ANSI, the employees had far *greater* contacts with New York than Warman, as they had at least been physically present in New York or worked with clients in New York.  Nevertheless, their NYLL claims properly were still dismissed.

3

even have contacts with New York.  Plaintiff's argument stems from the flawed premise that because Maryland, Washington D.C., and New Jersey each "have different, conflicting labor laws, such as minimum wage and statute of limitations," an interest analysis must be conducted to determine which state's labor laws apply to his claims.  Pl's Opp. at 6-7.  This argument is nonsensical and evidences Plaintiff's fundamental misunderstanding of ANSI's argument – that because the NYLL was enacted to protect workers in New York (and there is no evidence it was intended to apply extraterritorially), it does not apply to him.

In support of his argument that there exists a "conflict of laws" because different states have different minimum wages, Plaintiff cites *Amusement Industry v. Stern,* 693 F. Supp. 2d 327 (S.D.N.Y. 2010).  The issue in *Amusement Industry*, however, was whether the Court should apply New York law or California law to the *common law tort claims* of fraud, negligent misrepresentation, agency, conspiracy, equitable lien, constructive trust, and purchase money regarding trust, where one party lived in California, the other lived in New York, the site of the harm was in one state, and yet the economic loss was felt in the other.  *Id.* Accordingly, the court had to conduct an interest analysis to determine which state had a greater interest in the outcome of the litigation and, therefore, should have its common law doctrines applied.  *Id.*  The issue here is not which state's *common law* will apply to a *tort claim* brought by a plaintiff who has ties to two different states.  Rather, the issue is whether Plaintiff, a Canadian citizen who has never set foot in New York, let alone worked in New York, is entitled to protection under New York's statutory law.  He is not.

Plaintiff's reliance on *Cohain v. Klimley*, 2010 U.S. Dist. LEXIS 98870 (S.D.N.Y. Sept. 20, 2010), is equally misplaced.  In *Cohain*, this Court was again tasked with deciding which state's common law should apply to a *tort* claim when the defendant (domiciled in New

York) engaged in fraud in New York that harmed the plaintiffs who lived in Iowa, Arizona, and Michigan. *Id.* Plaintiff has not cited one case to support his argument that an interest analysis applies here, because there are none. Indeed, the New York Court of Appeals has concluded that an interest analysis does not change the question of whether any given statute has extraterritorial application. *Fried v. Seippel,* 80 N.Y.2d 32, 39 (1992) (the parties focused their arguments on "whether New York's interest analysis supports application of New York law…however, even if New York's substantive law were held applicable…a question would remain as to whether [the conduct] fall[s] within the statute's coverage").

Without question, the NYLL was enacted to protect workers in New York, and there is nothing to evidence that the Legislature intended for the NYLL to apply extraterritorially. Plaintiff's conduct, therefore, does not fall within the statute's coverage. Accordingly, any "interest analysis" is inapplicable and Plaintiff's NYLL claims should be dismissed.

## B. The Generic Choice Of Law Provision In The Agreement Does Not Confer Broad Statutory Rights Under the NYLL.

Plaintiff's argument regarding the choice-of-law provision rests on the faulty premise that ANSI has used the provision "as both a sword and a shield." Pl's Opp. at 1. ANSI has not used the provision at all. Rather, it is Plaintiff that has made much of the provision, arguing that despite its express language limiting the application of New York law to contractual claims under the Agreement, it somehow bestows upon him all of New York's statutory rights. However, other than simply labeling the choice-of-law provision as "broad," Plaintiff has failed to provide any support for his untenable argument.

As ANSI explained in its moving brief, provisions like the one in the Assessor Agreement that merely state that "*[t]his agreement* shall be governed by the laws of the State of New York" (emphasis added) are consistently found to be too narrow to encompass

statutory or tort claims. *Krock*, 97 F.3d at 645 ("Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the *entire relationship* between the contracting parties.") (emphasis added). As Judge Carter explained in *Rice v. Scudder Kemper Invs., Inc.*, 2003 WL 21961010, at *4 (S.D.N.Y. Aug. 14, 2003), *aff'd* 183 F. App'x 147 (2006), "[f]or parties to be bound by New York law with regard to non-contractual causes of action [*i.e.*, alleged violations of the NYLL], the choice-of-law provision would have had to include *much broader language*, indicating that *any controversy 'arising out of or relating to' the agreement* would be governed by the laws of New York." (emphasis added) (refusing to apply the New York Human Rights Law to a non-resident plaintiff who did not work in New York where the choice-of-law provision in the plaintiff's employment contract stated that "the validity, interpretation, construction, and performance of *this Agreement* shall be governed by the law of the state of New York.") (emphasis added). Many other decisions have reached the same conclusion. *See Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F. Supp. 210, 215 (S.D.N.Y. 1984) ("[I]n New York . . . a contractual choice of law provision governs only a cause of action sounding in contract."); *Knieriemen v. Bache Halsey Stuart Shields, Inc.*, 74 A.D.2d 290, 296 (1st Dept. 1980), *appeals dismissed* 50 N.Y.2d 1021 (1980) (same); *Burnett v. Physicians' Online, Inc.*, 1997 WL 470136, *12 (S.D.N.Y. Aug. 15, 1997); *Melia v. Zenhire, Inc.*, 42 Misc. 3d 1206(A) (Sup. Ct., Erie Cnty. Dec. 11, 2013) (generic choice of law provision did *not* create a statutory wage claim).

Just as Plaintiff has misconstrued the applicability of an interest analysis to statutory claims, Plaintiff has failed to appreciate the difference between common law contractual claims arising under an employment agreement (i.e., a claim to enforce a bonus promised by a

contract) and statutory claims arising independent of any such agreement.  Plaintiff's reliance on *Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125 (S.D.N.Y. 2009), evidences this misunderstanding, as he cites it for the proposition that the "Southern District explicitly held that choice of law provision requiring a dispute to be adjudicated under Texas was enforceable for a claim that merely arose out of the employment agreement."  Pl's Opp at 8. The employment agreement in *Torain* provided that "construction and interpretation *of this Agreement* shall be governed and construed in accordance with the laws of the State of Texas." *Id.* at 137 (emphasis added).  And the plaintiff in *Torain* was prosecuting contractual claims that arose specifically "under the terms of the Employment Agreement," not tort or statutory claims.  *Id.* at 138.[3]  Plaintiff's reliance on *Butvin v. Doubleclick, Inc.*, 2001 U.S. Dist. LEXIS 2318 (S.D.N.Y. Mar. 5, 2001), is similarly flawed and in fact helpful to ANSI, as the decision explains that "a contractual choice of law provision . . . does not bind the parties with respect to non-contractual causes of action."

Here, Plaintiff's NYLL claims are non-contractual causes of action, so the choice-of-law provision is inapplicable.  Plaintiff has not cited to a single decision where a generic choice of law provision was deemed to create statutory rights.  Instead, as evidenced by all of the decisions cited by ANSI, generic provisions like the one at issue here are limited to contractual claims.  *See Krock*, 97 F.3d at 645 ("Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties."); *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F. Supp. 210,

---

[3] This Court explained that Texas law would also apply to the plaintiff's claim for a breach of the implied covenant of good faith and fair dealing because it too is a *contractual cause of action*. *See id.* (*citing Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 2009 WL 935665 (S.D.N.Y. April 6, 2009)).

215 (S.D.N.Y. 1984) ("[I]n New York . . . a contractual choice of law provision governs only a cause of action sounding in contract."). *See also* Memorandum of Law at 8-10.

Finally, Plaintiff argues that without NYLL claims, he is left with "no practical recourse for wage-and-law violations." Pl's Opp. at 13. That is simply false, as he remains free to pursue his minimum wage, overtime, and liquidated damages claims under the FLSA for the wages he seeks. The NYLL does not provide default protection to anyone working for a company that simply has offices in New York, even its headquarters. If this were the case – statutory rights were bestowed upon workers because their alleged employers maintained offices in particular states – there would be a flood of lawsuits filed in New York by workers around the country asserting NYLL rights due to the six year statute of limitations. The real motivation behind Plaintiff's curious arguments appears to be to increase his leverage to attempt to force ANSI – a non-profit organization with limited resources – to settle meritless claims out of fear of class-wide liability. The Court should not facilitate that effort.

### C.     **ANSI's Operations in New York Do Not Create Statutory Rights Under the NYLL for Individuals Across the Country and Around the World.**

Finally, ANSI has not "impliedly consented" to the application of the NYLL through any of its conduct, let alone by maintaining offices in New York. As ANSI explained previously, if statutory rights were bestowed upon workers because their employers maintained offices or were based in New York, the state's courts would be overrun with wage and hour claims by workers in every other state seeking to avail themselves of the six year statute of limitations and other state-specific claims and penalties under the NYLL.

Furthermore, ANSI has not relied on the protections or defenses of New York law, and it has not "relied solely on New York law to date." Pl's Opp. at 14. Even more bizarre, however, is Plaintiff's argument that ANSI has somehow consented to the application of the

NYLL because it "asserted defenses to Warman's First Amended Complaint" and "all of the other defenses are based on New York law as well since they have to be based on something." Pl's Opp. at 14-15.  The only reason the parties are even discussing the NYLL is because Plaintiff asserted claims against ANSI under the NYLL.  Certainly, ANSI did not "impliedly consent to the NYLL by asserting defenses under the NYLL" when it was Plaintiff that filed claims pursuant to the NYLL, thus requiring ANSI to respond and assert defenses.  Under Plaintiff's logic, the fact that ANSI has moved to dismiss the NYLL claims would also evidence its consent to the NYLL.  And taking Plaintiff's logic a step further, anyone could sue anyone else in any court in any state and then the defendant would necessarily "consent" to the broad applicability of the laws of that state, regardless of the absence of any connection to the state at all, simply by defending itself.  Obviously, this is not how the law works.

Moreover, Plaintiff cites no law to suggest that a party "impliedly consents" to the NYLL merely by asserting defenses to claims under the NYLL.  *Alter v. Bogoricin*, 1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 4, 1997), certainly does not support this proposition despite Plaintiff's reliance on it.  *Alter* applied New York law because the plaintiff worked for the defendant in New York, the employment agreement did not designate another law to apply to *contractual* claims arising out of the Agreement, and New York had the most significant interest in the dispute.  *Id.*  In *Tehran-Berkeley Civil & Envtl. Engs. v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239 (2d Cir. 1989), is equally unhelpful to Plaintiff.  The court applied New York law because the parties tacitly admitted that New York law applied when they relied on it in their briefs related to their *contract* dispute.  In other words, the parties both relied on the body of New York common law to determine the interpretation of the contract.  In sum, Plaintiff has relied on cases that in no way support his argument.

9

The NYLL was enacted to protect workers in New York and, as discussed in detail above and in ANSI's opening Memorandum, there was no evidence of the Legislature's intent to apply the NYLL extraterritorially.  *Id.*  The mere fact that ANSI maintains offices in New York and responds to complaints (based on New York statutory law) filed against it in federal court rather than defaulting does not confer all New York statutory rights to individuals who have never even set foot in the state, let alone allegedly worked for ANSI in New York.

III.   **CONCLUSION**

Plaintiff, a Canadian resident who attended brief "training sessions" in Washington, D.C., Maryland, and New Jersey has failed to state a claim under the NYLL because it does not apply extraterritorially.  Neither the generic choice-of-law provision in the "Assessor Agreement" nor ANSI's operations in New York change that conclusion.  Accordingly, Plaintiff's NYLL claims should be dismissed in their entirety, with prejudice, for failure to state a claim, together with such other relief as this Court deems just, proper and equitable.

Dated: November 23, 2015

Respectfully submitted,
MORGAN, LEWIS & BOCKIUS LLP
By: /s/ *Michael J. Puma*
      Michael J. Puma
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5305
mpuma@morganlewis.com

Ashley Hale
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
ahale@morganlewis.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Reply Memorandum of Law in Further Support of Motion to Dismiss New York Labor Law Claims was electronically filed with the Court and served via its ECF/CM system, on November 23, 2015, upon the following:

Alisa Ann Martin
Amartin Law, PC
600 West Broadway, Suite 600
San Diego, CA 92101
(619)-308-6880
Fax: (619)-308-6881
Email: alisa@amartinlaw.com

Todd Seth Garber
Finkelstein Blankinship, Frei- Pearson & Garber, LLP
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
914-298-3281
Fax: 914-824-1561
Email: tgarber@fbfglaw.com

Travis K. Jang-Busby
2173 Salk Avenue, Suite 250
Carlsbad, CA 92011
760.206.3566
Fax:  760.888.3575
Email: tjbusby@sdlawoffices.com

*Counsel for Plaintiff*

s/ *Michael J. Puma*
Michael J. Puma

11