**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JORDAN WARMAN, individually and on behalf of
all others similarly situated,

                       *Plaintiff,*

     v.

AMERICAN NATIONAL STANDARDS
INSTITUTE, a 501(c)(3) organization,

                       *Defendant.*

Civil Action No.: 1:15-cv-5486-RA-FM

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION**
**<u>CERTIFICATION AND NOTICE PURSUANT TO 29 U.S.C. § 216(B)</u>**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL HISTORY .................................................................................4

III.    FACTS.................................................................................................................5

      A.    ANSI Is A Non-Profit Providing Vital Services To The Public..........................5

      B.    Plaintiff Was Never Qualified As An Assessor....................................................6

      C.    Plaintiff, Who Was Never Qualified as an Assessor, Admits He Has No
            Knowledge About the Work Performed by Assessors or Their Varying
            Relationships With ANSI .....................................................................................7

      D.    Actual Assessors' Varying Relationships with ANSI Are Radically
            Different Than What Is Suggested By Plaintiff's Speculation..............................8

IV.     ARGUMENT .....................................................................................................11

      A.    The FLSA's Collective Action Procedure Was Intended To Limit The
            Ability To Proceed Collectively And Promote Judicial Efficiency ...................11

      B.    The Great Burdens Of Collective Actions On Courts And Parties Warrant
            A Meaningful Conditional Certification Standard ..............................................12

      C.    The Conditional Certification Standard Has Never Been As Low As
            Plaintiff Suggests And Is Certainly Now More Demanding Under Glatt ...........13

      D.    Whether Assessors are Independent Contractors or Employees Under The
            FLSA Requires Individualized Inquiries That Preclude Conditional
            Certification Absent Common Proof...................................................................14

      E.    The Court Also Cannot Collectively Adjudicate Whether Assessors'
            at Training Was Compensable "Work" by an "Employee" Where
            Determining the Primary Beneficiary of the Training Requires
            Individualized Inquiries .....................................................................................16

      F.    Even Before Glatt, District Courts In This Circuit Rejected Attempts To
            Conditionally Certify Similar Misclassification Claims Absent Common
            Proof ...................................................................................................................18

      G.    Plaintiff Has Failed To Meet His Burden To Establish That Assessors Are
            Similarly Situated To Him And Each Other.......................................................19

            1.    Plaintiff's argument that classification alone warrants conditional
                  certification must be rejected under Glatt.................................................19

            2.    Plaintiff offers no "common proof" of his bare assertions that all
                  Assessors should be classified as employees ...........................................20

            3.    Plaintiff and actual Assessors are not similarly situated .........................22

# TABLE OF CONTENTS
(continued)

**Page**

H.     If This Court Permits Notice, Which It Should Not, Notice Should Be Limited To Assessor-Candidates, Like Plaintiff, Who Never Became Assessors .................................................................................................23

I.     If Any Notice Is Permitted, It Should Be Fair And Accurate..............................24

V.   CONCLUSION ........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Adair v. Wis. Bell, Inc.*,
  2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) .......................................................................12

*Ahmed v. T.J. Maxx Corp.*,
  No. 10-3609, 2015 WL 2189959 (E.D.N.Y. May 11, 2015)..........................................18, 20, 21

*Anglada v. Linens 'N Things, Inc.*,
  No. 06-12901, 2007 WL 1552511 (S.D.N.Y. May 20, 2007)....................................................24

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) .............................................................................................................13

*Bamgbose v. Delta-T Grp., Inc.*,
  684 F. Supp. 2d 660 (E.D. Pa. 2010).......................................................................................18

*Bernard v. Household Intern., Inc.*,
  231 F. Supp. 2d 433 (E.D. Va. 2002) .......................................................................................24

*Bouthner v. Cleveland Constr., Inc.*,
  No. 11-0244, 2012 WL 738578 (D. Md. Mar. 5, 2012) ...........................................................14

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988) ...................................................................................................14

*Camper v. Home Quality Mgmt. Inc.*,
  200 F.R.D. 516 (D. Md. 2000) ..................................................................................................24

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
  595 F. Supp. 2d 200 (N.D.N.Y. 2009) ..........................................................................12, 24, 25

*Fraticelli v. MSG Holdings, L.P.*,
  No. 13-6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014)........................................................17

*Glatt v. Fox Searchlight Pictures, Inc.*,
  791 F.3d 376 (2d Cir. July 2, 2015)....................................................................................passim

*Guillen v. Marshalls of MA, Inc.*,
  841 F. Supp. 2d 797 (S.D.N.Y. 2012) ...........................................................................18, 20, 21

*Hall v. Guardsmark*,
  No. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012).......................................................12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Hallissey v. Am. Online, Inc.*,
99- 3785, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ............................................................24

*Hintergerger v. Catholic Health Sys.*,
No. 08 -3805, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ...................................................25

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) .................................................................................................................11

*Howard v. Securitas Sec. Servs., USA Inc.*,
No. 08-2746, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009) .........................................................25

*Ikikhueme v. CulinArt, Inc.*,
No. 13-0293, 2013 WL 2395020 (S.D.N.Y. Jun. 3, 2013)...................................................20, 23

*Jancich v. Stonegate Mortg. Corp.*,
No. 11-2602, 2012 WL 380287 (D. Kan. Feb. 6, 2012)...........................................................25

*Jenkins v. TJX Companies Inc.*,
853 F. Supp. 2d 317,323 (E.D.N.Y 2012) ...............................................................................20

*Jeong Woo Kim v. 511 E. 5th St., LLC*,
985 F. Supp. 2d 439 (S.D.N.Y. 2013) .....................................................................................24

*Khan v. Airport Mgmt. Servs., LLC*,
No. 10-7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ....................................................20

*Knispel v. Chrysler Grp. LLC*,
No. 11-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012) ..................................................25

*Levinson v. Primedia Inc.*,
No. 02 -2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ..............................................14, 18

*Meyer v. United States Tennis Ass'n.*,
607 Fed. App'x 121 (2d Cir. 2015) ......................................................................................14, 19

*Morales v. Thang Hung Corp.*,
No. 08-2795, 2009 WL 2524601 (S.D. Tex. Aug. 14, 2009)....................................................12

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ..............................................................................................passim

*Pfaahler v. Consultants for Architects, Inc.*,
No. 99-6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000)..........................................................15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Prizmic v. Armour, Inc.*,
  No. 05-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006)......................................................18

*Rudd v. T.L. Cannon Corp.*,
  No. 10-0591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ..........................................................12

*Sanchez v. El Rancho Sports Bar Corp.*,
  No. 13 - 5119, 2014 WL 1998236 (S.D.N.Y. May 13, 2014)......................................................22

*Vargas v. HSBC Bank USA, N.A.*,
  No. 11-7887, 2012 WL 10235792 (S.D.N.Y. Aug. 9, 2012) ......................................................18

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
  No. 10-8820, 2011 WL 2693712 (S.D.N.Y. July 11, 2011)........................................................20

*Velez v. Sanchez*,
  693 F.3d 308 (2d Cir. 2012) ...............................................................................................16, 22

*Walling v. Portland Terminal Co.*,
  330 U.S. 148 (1947) ..................................................................................................................16

*Wang v. Hearst Corp.*,
  293 F.R.D. 489 (S.D.N.Y. 2013)..............................................................................................16

*White v. Osmose, Inc.*,
  204 F. Supp. 2d 1309 (M.D. Ala. 2002)....................................................................................24

**STATUTES**

29 U.S.C. § 251(a) ..............................................................................................................................11

29 U.S.C. §§ 255-56 ...........................................................................................................................11

Pub. L. No. 52-49, §§ 5-7, 1947 ........................................................................................................11

**OTHER AUTHORITIES**

Federal Rule 26(a) ...............................................................................................................................15

## I.   <u>INTRODUCTION</u>

Plaintiff Jordan Warman ("Plaintiff") is a failed applicant who was never qualified by the

American National Standards Institute ("ANSI") to conduct assessments as an independent

contractor.  He applied to ANSI in 2013, hoping to benefit professionally from a prestigious

affiliation with ANSI, and thus attended training and an on-site assessment as part of ANSI's

evaluation process.  However, based on observations of his odd behavior and communications,

Plaintiff was one of a small number of applicants in recent years who ANSI decided not to approve

to conduct assessments.  Hurt and embarrassed by a perceived professional snub, this disgruntled

Plaintiff decided that his best "angle" (his own term in one of a flurry of harassing e-mails he sent to

ANSI and its Assessors) for revenge would be to sue ANSI for an "unpaid contribution claim."

Despite never even completing ANSI's application process, Plaintiff purports to bring a

sprawling, nationwide collective action on behalf of all "Assessor Trainees, Assessor Candidates,

[and] Assessors" who he wildly speculates were uniformly misclassified as independent contractors

and, moreover, uniformly should have received wages even as mere applicants/trainees.  Plaintiff's

deposition revealed that his claims rest on nothing more than conjecture about others, particularly

ANSI's varying relationships with the hundreds of individuals who, unlike him, successfully

completed the evaluation process and have enjoyed a favorable and highly paid contractual

relationship with ANSI for years.

Tellingly, despite Plaintiff's efforts to solicit the support of the other applicants, not one

person has joined Plaintiff in this action or submitted a declaration or other evidence in support of

him.  And his counsel, for whatever strategic reason, elected to seek certification without any

discovery whatsoever to support Plaintiff's guesswork about hundreds of others.  Thus, as Plaintiff

acknowledged during his deposition, he has no personal knowledge of where and how Assessors

perform contract work for ANSI, how Assessors are compensated, what alleged ANSI policies and

1

procedures (if any) apply to Assessors who contract with ANSI, or what instructions (if any) are given to any Assessors as alleged "supervision."  Plaintiff's Deposition, Declaration of Michael J. Puma ("Puma Decl.") at Exhibit ("Ex.") A ("Dep."), at 29-30, 151, 154, 188, 194, 232-237.  Indeed, the only information Plaintiff has is his limited personal experience – about two years ago – attending two training sessions and observing a single on-site assessment.  Dep. 153-154.

The varying relationships that Assessors have with ANSI is radically different than what Plaintiff admits he *merely inferred* from his personal contract that he signed with ANSI.  Dep. 188. As set forth in the Declarations attached as Exs. B-E to the Puma Decl., these Assessors consider themselves to be highly skilled independent contractors, specifically disagree with Plaintiff's claims, have a variety of other businesses and clients, complete projects for ANSI with virtually no direction and certainly no "supervision," have no guarantee of any work at all from ANSI, only conduct assessments on a part-time basis for ANSI when and if they choose to do so, and retain the right (like ANSI) to terminate the relationship at any time for any reason.  Directly contrary to Plaintiff's suggestion that training he attended during the evaluation process was compensable "work," these Assessors (in varying ways) consider the training to be (1) just "part of the deal" with ANSI that in turn allows them to perform contract work for $700, $900 or some agreed upon amount, as well as (2) a critical professional and business development opportunity that allows them to seek better and more work from private clients.

Under these circumstances, the Second Circuit's recent decision in *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376 (2d Cir. July 2, 2015) (vacating conditional certification), which is notably ignored by Plaintiff's Motion,[1] compels the denial of conditional certification because two critical facts are undisputed:  (1) Plaintiff admitted at his deposition that he lacks personal

---

[1] To the extent that Plaintiff uses his Reply to address *Glatt*, those arguments should not be considered by this Court, as Plaintiff should have addressed the controlling legal precedent in his opening brief and cannot unfairly deprive ANSI of the opportunity to respond in its opposition brief.

DB1/ 85588079.8

knowledge of others' relationships with ANSI (and his counsel failed to seek discovery to fill that gap); and (2) even if he had such knowledge, highly individualized evidence controls determinations of both whether any Assessor was misclassified as an independent contractor under the Fair Labor Standards Act ("FLSA") and, even if they were, whether they were entitled to be paid for training.

The Second Circuit has instructed, in more binding precedent, that conditional certification is only warranted if Plaintiff meets **his burden** to prove, **with <u>actual facts rather than unsupported assertions and presumptions</u>**, that he and potential opt-in plaintiffs "together were victims of a **common** policy or plan **that violated the law**" and are similarly situated **with respect to facts that matter for determining FLSA liability**.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis added).  Plaintiff's Motion at least notes *Myers*, but it fails to even acknowledge and attempt to meet this standard.  In *Glatt*, the Second Circuit further instructed that conditional certification is not appropriate where the court "must consider the individual aspects of an [employee]'s experience" to determine liability, and the plaintiff fails to identify "common proof" of a shared experience.  791 F.3d at 388.  Applied to this case, *Myers* and *Glatt* dictate that absent common proof that hundreds of Assessors' relationships with ANSI were so similar that the propriety of their classification as independent contractors and whether their evaluation/training was compensable "work" could be adjudicated collectively, conditional certification is improper.  As discussed below, Plaintiff essentially admits that common proof is lacking here.

In sum, Plaintiff's assertions that Assessors were improperly classified as independent contractors are entirely unsupported and directly contradicted by the record, including the testimony of Plaintiff and actual Assessors.  Plaintiff, who never even became an Assessor, has not come close to demonstrating that he and hundreds of others who actually completed the evaluation and became Assessors were victims of a **common** and **unlawful** policy of misclassification.  If conditional

3

certification were granted based on Plaintiff's reckless speculation, the fact-based standard for certification would be eviscerated.  Based on *Glatt* and *Myers*, Plaintiff's Motion should be denied.

## II.   PROCEDURAL HISTORY

On April 23, 2015, Plaintiff filed a Complaint against ANSI in the United States District Court for the Southern District of California, alleging violations of the FLSA and NYLL.  *Warman v. ANSI*, 15-cv-0907, Dkt. 1.  The Court dismissed that claim because Warman, "a Canadian citizen residing in Ontario, Canada," failed to show that venue in California was proper.  *Warman v. ANSI*, 15-cv-0907, Dkt. 10.  Undeterred, and determined to avenge his perceived slight, Plaintiff re-filed his Complaint in this Court on July 14, 2015.  Dkt. 1.  Plaintiff filed an Amended Complaint on August 26, 2015.  Dkt. 15.  On October 9, 2015, ANSI moved to dismiss the NYLL claims given that Plaintiff never performed any alleged work for ANSI in New York.  Dkt. 21.

On November 4, 2015, Plaintiff filed the instant Motion, seeking to conditionally certify a collective action on behalf of "all persons who [ANSI] required to attend New Assessor Training, Annual Assessor Training, or any other type of training, including onsite assessment observation training, to receive training, at any time from July 13, 2012 to the present and were not compensated for that time."  Dkt. 37.[2]  Yet, despite this action having existed in some form for over eight months, Plaintiff elected not to take any discovery or conduct any investigation to support his claims.  Dep. 55-56.  Instead, he relies on the conclusory, attorney-drafted declaration of himself as the sole Plaintiff.  Dep. 51-53.  Apparently, other Assessor Candidates and Assessors that Plaintiff

---

[2] Plaintiff's original motion sought to certify a collective action on behalf of "all persons **residing in the United States** who [ANSI] required to attend training, either New Assessor Training, Annual Assessor Training, onside assessment observation training for training purposes, and were not compensated for that time at any point after July 13, 2012."  Dkt. 28 (emphasis added).  This would have excluded Plaintiff, a Canadian citizen and resident.  ANSI takes no position as to whether the Court should permit Plaintiff's untimely amended Motion.  If it does not, Plaintiff cannot participate in his proposed collective action.

seeks to represent did not share his experience and have no interest in this case.[3]  The only

Assessors who have provided Declarations in this action have stated that they dispute Plaintiff's

claims.  *See* Declaration of Mickie S. Rops ("Rops Decl."), Puma Decl. at Ex. B, at ¶ 16;

Declaration of Robert Miller ("Miller Decl."), Puma Decl. at Ex. C, at ¶ 9; Declaration of William

Dardick, Ph.D. ("Dardick Decl."), Puma Decl. at Ex. D, at ¶ 11; Declaration of Akshay Mishra

("Mishra Decl."), Puma Decl. at Ex. E, at ¶ 11.

## III.   <u>FACTS</u>

### A.   <u>ANSI Is A Non-Profit Providing Vital Services To The Public.</u>

ANSI, a non-profit organization, has served for the past 90 years as an administrator and

coordinator of the United States private sector voluntary standardization system.  ANSI seeks to

enhance the global competitiveness of U.S. businesses and the American quality of life by

promoting and facilitating voluntary consensus standards and conformity assessment systems by

promoting their integrity.  One of the ways ANSI fulfills its mission is by contracting with

"Assessors" to conduct a wide variety of assessments to give formal recognition that an

organization is competent to carry out specific conformity assessment tasks.  *See*

http://www.ansi.org/about_ansi/introduction /introduction. aspx?menuid=1.  In order to be eligible

to contract with ANSI to conduct assessments, Assessor Candidates over the years have attended

various training as part of an evaluation process that includes passing a test and satisfactorily

---

[3] In fact, those Plaintiff solicited to support him are quite hostile to his claims.  One Assessor emailed Plaintiff: "Jordan, please stop writing to me and the group of assessors.  I want you to know that should it come to legal action, I will gladly testify on ANSI's behalf that your contribution to the three stages of ANSI training are worth nothing, and that your intrusive and unwanted emails are costly to ANSI and a distraction from our attention as assessors."  Dep. 64; Puma Decl., Ex. F.  Another Assessor explained to ANSI: "As I said before, I support your decision to reject him based on my reading his previous inappropriate letters and what appears to be his mental instability based on his letters."  Dep. 69; Puma Decl., Ex. G.  A third had similar concerns with Plaintiff's "incriminating and accusatory e-mails."  Dep. 126-129; Puma Decl., Ex. H.  One Assessor even hung up on Plaintiff.  Dep. 133-135; Puma Decl., Ex. I.  Warman nevertheless purports to represent all of these individuals (Dep. 63-64, 68-69, 127, 134), but clearly he speaks only for himself.

participating as an observer for a sample assessment.  *See* Ex. 5 Declaration of Jordan Warman at

Dkt. #29 ("Warman Decl.").  Only after completing these steps does the Assessor Review Panel

decide whether a particular individual is accepted to contract with ANSI and earn $700 or more per

day for their project work.  *Id.*

**B.     Plaintiff Was Never Qualified As An Assessor.**

The extent of Plaintiff's interaction with ANSI was his failed evaluation – attendance at two

classroom-style "training sessions," taking and passing a test, and observation of one sample

assessment.  Complaint ¶ 15.  Plaintiff admits he was never qualified as an Assessor and, therefore,

he has never actually conducted any assessments.  The only assessment he attended was as an

observer.  Dep. 28.  Yet, he purports to represent all Assessors who have actually conducted

assessments as contractors.  *See* Memorandum of Law in Support of Motion for Conditional

Collective Action Certification And Notice Pursuant to 29 U.S.C. §216(b) ("MOL"), at 1.

Plaintiff knew that in order to have the opportunity to contract with ANSI as an Assessor he

needed to successfully complete the application, interview, and training process.  Warman Decl.,

Ex. 5.  And he understood that although he would not be paid for the valuable training he received,

in exchange for successfully completing training (including an on-site observation) he could be

qualified as an Assessor and he would have the opportunity to earn $700 a day for assessment work.

Dep. 60.  Plaintiff knew that the application process entailed selection by the ANSI Assessor

Review Panel.  Warman Decl.; Ex. 5; Dep. 191.  Plaintiff was eager to go through the evaluation

process and hopefully then conduct assessments because he understood that having ANSI "on [his]

resume" would influence employers and help him get other work.  Dep. 105-107.  Naturally,

Plaintiff was unhappy when he was not qualified as an Assessor.  Dep. 33.  He explained that it was

6

a "real blow" to him and his family, and that he was quite embarrassed.  Dep. 141-142, 282.

Apparently as a result, Plaintiff decided to pursue this action.[4]

**C.** **Plaintiff, Who Was Never Qualified as an Assessor, Admits He Has No Knowledge About the Work Performed by Assessors or Their Varying Relationships With ANSI.**

In his only evidence supporting his Motion, Plaintiff explains that he "believes" Assessors

are improperly classified as contractors based on speculation about ANSI's relationships with

others.  Warman Decl. ¶ 5.  But Plaintiff confirmed at his deposition that his "beliefs" are not based

on personal knowledge and, in fact, he has no knowledge about any individual Assessor's

relationship with ANSI or the project work they have performed for ANSI.  With respect to the

"examples" supporting his claims, Plaintiff testified as follows:

- *ANSI controlled the policies, procedures, and time frames for Assessors to complete their work.*  Plaintiff admitted that he does not know which "policies and procedures," if any, have applied to Assessors that actually contract with ANSI.  Dep. 151-154.

- *Assessors did not have the opportunity for profit or loss for any of the work performed on ANSI's behalf.*  Plaintiff acknowledged that he had no knowledge with respect to how Assessors were actually compensated, could "only conjecture that they were paid according to the same contract that [he] saw," and admitted that if he had been accepted as an Assessor, he could have turned down any projects offered to him by ANSI for any reason.  Dep. 28-30, 188, 232-233.

- *Assessors have to complete work during the time frames assigned by ANSI.*  Trying to justify this baseless conclusion, Plaintiff said that "based on his interpretation" of the contract that he personally signed, it was "more than likely" that all Assessors were treated the same and required to complete work during time frames assigned by ANSI. Dep. 239-241.  But he admitted that beyond his "interpretation" of his own contract, he has no information about specific directions given to any Assessors.  Dep. 233-234.

- *ANSI specifically trained Assessors on how to perform their jobs.*  Plaintiff's assumption that ANSI specifically trained Assessors on how to perform their jobs can only be based on his attendance, ***two years ago***, at two class-room style training sessions and on on-site observation, all of which were specific to his standard.  Dep. 153, 242-

---

[4] Plaintiff emailed a large group of Assessors to solicit their support for his dispute with ANSI, explaining that his best "angle" to get back at ANSI for not choosing him as an Assessor was his "unpaid contribution claim."  Dep. 36; Puma Decl., Ex. F.

243.  He admitted that there were only about **twenty-four people** in his personal training session and that he has "no idea" what kind of training has been given to hundreds of other Assessors in different training sessions for different standards, or even whether anyone was assigned "homework," as he claims was his experience.  Dep. 41, 265. Plaintiff testified that he believes he participated in a "working group" at his training session, but he has no knowledge of any facts that would suggest that any actual Assessor participated in a "working group" as part of training.  Dep. 40-41.

In sum, Plaintiff knows nothing about the hundreds of others he purports to represent.  And Plaintiff and the multiple law firms representing him have done nothing to fill this huge hole in Plaintiff's Motion through discovery or any fact investigation other than Plaintiff looking on ANSI's website to see if it "state[s] contract or employee, and what they mention about training." Dep. 55-56.  All of this is why, as Plaintiff admitted at his deposition, the only way to evaluate any given Assessor's relationship with ANSI is to **question them individually**.  Dep. 258-259.

### D.   Actual Assessors' Varying Relationships with ANSI Are Radically Different Than What Is Suggested By Plaintiff's Speculation.

Qualified ANSI Assessors – those that have gone through the application and training process, and have been approved by ANSI and then performed assessments – tell a radically different story than Plaintiff.

For example, although Plaintiff claimed that ANSI controlled the policies, procedures, and time frames for Assessors to complete their work, Mickie S. Rops testified that after receiving the specifications of an ANSI project she *chooses* to accept, she is "essentially on [her] own" to conduct the assessment because "as a professional with over 19 years' experience in this field, ANSI certainly does not direct how [she] perform[s] the assessments."  Rops Decl. ¶ 10.  She can even hire other employees or subcontractors to assist her.  *Id.*  As another example, Robert Miller testified that "once [he] accepts a project from ANSI, there is no supervision or direction from ANSI.  It is up to the assessment team to get the work done."  Miller Decl. at ¶ 5.  Akshay Mishra testified that "it is up to me to make sure that the assessment is conducted, and there is no

8

supervision or oversight from ANSI on how the assessment is conducted."  Mishra Decl. at ¶ 6.

William Dardick explained that "after ANSI provides [him] with the materials and information [he]

needs to conduct the assessment, [he] is not supervised or managed in any way.  When [his]

deliverable is ready, [he] submits it to ANSI, but other than that, [he] has little to no contact with

ANSI during the course of the assessment."  Dardick Decl. ¶ 6.  He, like the other declarants, uses

his own cell phone, laptop, internet, home office, and any other tools and supplies he needs to

conduct the assessment.  *Id.*; Miller Decl. ¶ 5; Rops Decl. ¶ 11; Mishra Decl. ¶ 7.

Further contrary to Plaintiff's speculation, all of the declarants testified that they control the

opportunity for profit or loss for the work performed on ANSI's behalf, as they can accept or reject

work from ANSI for any reason or no reason.  Dardick Decl. ¶ 5; Rops Decl. ¶ 9; Miller Decl. ¶ 4;

Mishra Decl. ¶ 5.  For example, Mr. Miller, who has been conducting assessments on and off for

ANSI since 2002 (upon becoming "bored" after he retired), testified that he now he only accepts

projects that do not require him to travel and can be completed from home.  Miller Decl. ¶ 4.  Dr.

Dardick, on the other hand, only accepts a limited number of assignments because he works full-

time as professor.  Dardick Decl. ¶ 4.  As Dr. Dardick explained, consultants can earn a lot more

money for private companies, as opposed to a non-profit like ANSI, but often work for ANSI out of

a desire to serve the greater field of certification and accreditation.  Dardick Decl. ¶ 4.

Plaintiff's belief that "ANSI specifically trained assessors on how to perform their jobs" is

simply untrue as an alleged uniform experience.  Dr. Dardick worked at the Food and Drug

Administration for years before leaving to become a professor at George Washington University.

Dardick Decl. ¶¶ 1-2.  Ms. Rops began her career in 1993 at the American Dietetic Association,

turned to the Commission on Dietetic Registration soon thereafter, and has run her own company

for the past 19 years.  Rops Decl. ¶ 2-5.  She also presents, teaches, and publishes works in this

field.  *Id.* ¶ 6.  Mr. Miller was a professional at UL for his entire career before turning to project

9

work for ANSI to fill some of his free time in "retirement." Miller Decl. ¶ 2. Mr. Mishra has

worked as an electrical engineer since 1979, working at different companies around the world.

Mishra Decl. ¶ 2. Plaintiff has no legitimate basis to broadly assert that each and every one of the

Assessors, highly skilled and educated professionals generally with established careers outside

ANSI, uniformly need "training" on how to perform assessments for ANSI.

The declarants also tell a very different story of the purpose and value of the training they

receive, for which they disclaim any right to wages. As Ms. Rops explained, she leverages her

experiences with ANSI to counsel her other clients and generate more work for her company, MRC.

Rops Decl.¶ 12. Many Assessors don't expect to be paid for training sessions because they do not

consider it "work." *Id.*; Dardick Decl. ¶ 10; Miller Decl. ¶ 7; Mishra Decl. ¶ 8. Rather, in addition

to the client development opportunities noted by Ms. Rops, they understand that in order to stay

current in the field of assessment and certification, such that they can charge ANSI between $700

and $900 a day for project work, they must attend training. Rops Decl. ¶ 12; Dardick Decl. ¶ 10;

Miller Decl. ¶ 7; Mishra Decl. ¶ 8.[5] This is just part of the very valuable deal with ANSI as

independent contractors.

In sum, all of the evidence, including Plaintiff's deposition testimony, the limited

documentary evidence submitted by Plaintiff, and the testimony of actual Assessors shows only two

things: (1) Plaintiff has no material knowledge about anyone other than himself, (2) and an

individual inquiry with respect to each Assessor's relationship with ANSI is necessary.

---

[5] Plaintiff's claimed uniform experience is further undermined by the fact that these Assessors dispute that there was any "homework" to be completed prior to or during training. Plaintiff presents this as a key part of his claims for which he seeks hundreds of hours of allegedly unpaid work (Dep. 206, 213-216), but other Assessors tell an entirely different story. Dr. Dardick was working a full-time job when he attended a training session, and so at night, after training, he worked on his full-time job. Dardick Decl. ¶¶ 7-8. He never even studied for the test he took after New Assessor Training. *Id.* Ms. Rops has also never completed any homework, and as an ANSI instructor has never assigned homework. Rops Decl. ¶¶ 14-15. Similarly, Mr. Miller and Mr. Mishra have never completed any homework for training, and often Mr. Miller does not even read the agenda that ANSI sends out prior to training. Miller Decl. ¶ 8; Mishra Decl. ¶ 10.

10

# IV.   ARGUMENT

### A.   The FLSA's Collective Action Procedure Was Intended To Limit The Ability To Proceed Collectively And Promote Judicial Efficiency.

In response to a flood of "representative" litigation, Congress amended the FLSA to *limit* the ability to proceed collectively.  Congress prohibited representative FLSA actions and restricted suits under Section 216(b) to include only "similarly situated" individuals who file a consent to join. Pub. L. No. 52-49, §§ 5-7, 1947 U.S.C.C.S. 85; 29 U.S.C. §§ 255-56.  Congress expressly codified its findings that the original FLSA had "creat[ed] wholly unexpected liabilities, immense in amount and retroactive in operation," and that the flood of litigation "would bring about financial ruin of many employers and seriously impair the capital resources of many others."  29 U.S.C. § 251(a). Absent appropriate limitations, "employees would receive windfall payments" for activities for which they expected no payment, the demands to be paid for such activities would increase, and "the courts of the country would be burdened with excessive and needless litigation[.]"  *Id.*

Accordingly, under the FLSA as amended, plaintiffs may only bring a collective action on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  Section 216(b) does not define "similarly situated."  In *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 165 (1989), the Supreme Court held that a court may grant conditional certification and facilitate notice to potential plaintiffs "in appropriate cases," and the Court further held that the touchstone for conditional certification is judicial efficiency.  *Id.*  As discussed below, conditional certification here would not promote judicial efficiency given that evaluating each Assessor's relationship with ANSI would call for mini-trials on the status of each relationship and the value of any training for each Assessor.

Furthermore, judicial efficiency would not be promoted here by stirring up more litigation through a collective action notice where no other Assessor Candidates or Assessors have elected to join Plaintiff or support him and, to the contrary, have even explicitly stated that they do not agree

DB1/ 85588079.8

with Plaintiff's legal claims.  *See* Section II, *supra*; *See, e.g., Hall v. Guardsmark*, No. 11-213, 2012 WL 3580086, at *9-10 (W.D. Pa. Aug. 17, 2012) (denying conditional certification where plaintiff failed to offer sufficient evidence of "others interested in joining in the litigation") (citing *Morales v. Thang Hung Corp.*, No. 08-2795, 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009) (conditional certification denied because "there is no indication that . . . any other individuals actually want to join the suit . . . .   One affidavit is not enough to establish that the collective action, along with the expensive notice it requires, is the most efficient way to proceed with litigation")).

### B.   The Great Burdens Of Collective Actions On Courts And Parties Warrant A Meaningful Conditional Certification Standard.

Judicial efficiency is not achieved by rubber-stamping a conditional collective action and leaving the parties to months of expensive discovery before taking a hard look at decertification. *See, e.g., Rudd v. T.L. Cannon Corp.*, No. 10-0591, 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011) (courts must be "mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs" and avoid "the potential for overreaching [which] would result in loss of the efficiencies . . . .") (citing *Adair v. Wis. Bell, Inc.*, No. 08-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) ("'[I]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'")).  There is a clear "burden associated with defending against an FLSA" collective action claim after notice, of which a court must be "mindful."  *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009).  Conditional certification also gives plaintiffs undue leverage regardless of the merits of their claims:  "Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims."  *AT&T*

12

*Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011).  For these reasons, a meaningful

certification standard is critical to achieving the judicial efficiency required by the Supreme Court.

**C.**    **The Conditional Certification Standard Has Never Been As Low As Plaintiff Suggests And Is Certainly Now More Demanding Under *Glatt*.**

Heeding the Supreme Court, the Second Circuit recently developed a meaningful standard

for conditional certification.  Many of the decisions cited in Plaintiff's Motion notably precede

*Myers*, and they all precede *Glatt*.  Conditional certification is only appropriate if a plaintiff makes a

"'factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a ***common***

policy or plan ***that violated the law***.'"  *Myers*, 624 F.3d at 555; *Glatt*, 791 F.3d at 387.  This

"'factual showing' cannot be satisfied simply by 'unsupported assertions.'"  *Myers*, 624 F.3d at 555.

Just this past July, the Second Circuit expounded upon this standard in a case similar in

some ways to this one.  In *Glatt*, the Second Circuit reversed a district court order conditionally

certifying a collective action where the plaintiff challenged the employer's uniform classification of

interns as unpaid, non-employees.  The Second Circuit held that in determining whether an unpaid

intern is an "employee" under the FLSA, like any other trainee, the court must determine "whether

the intern or the employer is the primary beneficiary of the relationship."  *Glatt*, 791 F.3d at 383.

The Court held that courts must apply a non-exhaustive set of seven factors when determining the

primary beneficiary of the unpaid internship, including individualized inquiries into each intern's

job duties.  *Id.*  Here, whether Assessors were properly classified as contractors and thus did not

need to be paid for training similarly requires individualized inquiries.  And so does the next step –

the primary beneficiary inquiry into whether the evaluation/training process primarily benefitted

ANSI or the Assessors/Assessor-Candidates even if they were misclassified as contractors.

After adopting this test in *Glatt*, the Second Circuit vacated the district court's order

granting conditional certification.  *Id.* at 387.  The Court reasoned that conditional certification was

not appropriate because the primary beneficiary test requires consideration of "the individual aspects of the intern's experience," and "[n]one of the common proof identified [by the plaintiff], and relied upon by the district court, will address these questions . . . ." *Id.* at 388.  Thus, under *Glatt*, in cases where the plaintiff's claim requires consideration of "the individual aspects of the [contractor]'s experience," and there is no "common proof" that shows each individual's experience was similar, conditional certification is not appropriate.  *Id.*

> **D.**   **Whether Assessors are Independent Contractors or Employees Under The FLSA Requires Individualized Inquiries That Preclude Conditional Certification Absent Common Proof.**

Like the primary beneficiary test in *Glatt*, the test for whether an individual is a contractor or an employee requires individualized inquiries into the nature of each Assessor's relationship with ANSI.  The determination of whether an employment relationship exists under the FLSA is based on the "economic realities" of the relationship.  *Meyer v. United States Tennis Ass'n.*, 607 Fed. App'x 121, 122 (2d Cir. 2015) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988).  Factors relevant to this determination include "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit and loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business."  *Brock*, 840 F.2d at 1058-59.  In a putative collective action, plaintiffs are not "similarly situated" when differences exist as to these factors.  *See, e.g., Levinson v. Primedia Inc.,* No. 02- 2222, 2003 WL 22533428 at *1 (S.D.N.Y. Nov. 6, 2003) (denying certification of FLSA collective action of contractors); *Bouthner v. Cleveland Constr.,*

*Inc.,* No. 11-0244, 2012 WL 738578 (D. Md. Mar. 5, 2012) (same); *Pfaahler v. Consultants for Architects, Inc.,* 99-6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) (same).[6]

Determining whether an individual is an independent contractor or an employee is fact-intensive.  Adjudicating for each putative collective action member (1) the degree of alleged control exercised by ANSI over an Assessor, (2) an Assessor's opportunity for profit and loss, (3) the degree of skill and independent initiative required to perform varying assessments, (4) the permanence of an Assessor's relationship with ANSI, and (5) the extent to which the performance of assessments is integral to ANSI's non-profit business is fact-intensive and highly individualized.[7]

The Second Circuit has made clear that when adjudicating a misclassification case, "a court must analyze 'all the facts in a particular case,'" *Myers*, 624 F.3d at 548.  For these reasons, *Myers* affirmed the district court's denial of Rule 23 certification in a manager misclassification case.  The Court reasoned that adjudication of the managers' claims on a class-wide basis was not appropriate because whether each manager was legally entitled to overtime under the state law equivalent of the FLSA executive exemption was an individualized inquiry.  *Id.* at 550-51.  Although *Myers* was a Rule 23 decision rather than an FLSA conditional certification decision, *Glatt* has made clear that its holding applies equally to conditional certification.  Where, as here, a plaintiff fails to establish

---

[6] Further highlighting the individualized inquiries needed to resolve the claims of those Plaintiffs seeks to represent, individualized damages inquiries will be needed even beyond liability inquiries.  Plaintiff's recently served supplemental Federal Rule 26(a) disclosures (Puma Decl., Exh. J) show the each and every Assessor and Assessor-Candidate would need to individually come up with their claimed work hours, some of which may be compensable or not (e.g., travel time) even after the contractor/employee and primary beneficiary inquiries.  There is simply no way to collectively adjudicate damages.

[7] Credibility disputes also highlight the necessary individual inquiries and need for individual cross-examination of each Assessor rather than collective adjudication.  Dep. 110, 170-172 ("I've exaggerated in my resume."); Dep. 211-212 ("Do you think that you in any way fairly represented that job and experience on your resume? "As I said, it was an exaggeration.").  Indeed, Plaintiff apparently represented his family's nanny placement service on his resume as work made to sound like it is from the measurement industry.

15

that putative collective action members' claims could be adjudicated through common evidence, conditional certification under the FLSA is inappropriate.[8]

### E.    The Court Also Cannot Collectively Adjudicate Whether Assessors' Time at Training Was Compensable "Work" by an "Employee" Where Determining the Primary Beneficiary of the Training Requires Individualized Inquiries.

Alternatively, even if Plaintiff could meet his burden to establish that each Assessors' contractor status could be collectively adjudicated, which he cannot, he could not meet his additional burden to show that the Court collectively could adjudicate whether the time devoted to the application/evaluation process was compensable as "work" by an "employee."

"The strictures of the FLSA . . . apply only to employees."  *Glatt*, 791 F.3d at 381.  The Supreme Court has long recognized that some "trainees" were not employees and thus "were beyond the reach of the FLSA's minimum wage provision."  *Glatt*, 791 F.3d at 381-382, *citing Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947).  Congress did not intend to "stamp all persons who, without any express or implied compensation agreement, might work for their own advantage on the premises of another."  *Walling,* 330 U.S. at 150, 152.  Indeed, individuals can be either "employees," in which case they are entitled to minimum wage and overtime pay, or "trainees," in which case they need not be paid minimum wage and overtime.  *Id.* at 149-53.

To determine whether an individual is an employee or a "trainee," "the proper question is whether the [trainee] or the employer is the primary beneficiary of the relationship."  *Id.* at 383; *Velez v. Sanchez*, 693 F.3d 308, 330 (2d Cir. 2012) (courts consider who is the "primary recipient of benefits" of the relationship); *Wang v. Hearst Corp.*, 293 F.R.D. 489, 493-94 (S.D.N.Y. 2013) (looking at all factors to determine primary recipient of benefits).  Absent some standardized set of

---

[8] Further demonstrating the mini-trials required on each putative collective action member's claims, Plaintiff insists that **dozens of witnesses** would be called upon to testify at trial in order to resolve even **just his own individual claims**.  Dep. 90-92.

experiences shared by hundreds of Assessors for years as they applied to ANSI, were evaluated, and attended varying training, which Plaintiff has failed to develop through any record evidence, an adjudication of these factors must be done on an individualized basis.

Here, Plaintiff claims that his training was for ANSI's benefit and should have been paid.[9] But those who actually became Assessors have testified to the contrary in varying ways. They have explained that ANSI training "is the most valuable professional development program that [they] attend all year," that they "benefit from [it] immensely," and that they are able to leverage what they learn at training to assist their private clients and obtain new clients. Rops Decl. ¶¶ 12-13; Miller Decl. ¶ 6; Dardick Decl. ¶ 8. And even Plaintiff benefited from his relationship more than he would prefer let on, as he testified that he wanted to attend training and become qualified by ANSI because having ANSI "on [his] resume" would influence employers and help him get work. Dep. 106-107. In sum, just as determining whether an individual is an independent contractor is fact-intensive, so too is determining whether individuals participating in training receive the primary benefit such that compensation is not required under the FLSA. *Glatt*, 791 F. 3d at 383-384. This is a second, independent basis to deny conditional certification given the required individualized inquiries into each putative collective action member's experiences even if contractor misclassification somehow could be adjudicated collectively. *See, e.g., Fraticelli v. MSG Holdings, L.P.*, No. 13-6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014) (denying conditional certification in unpaid intern misclassification case).

---

[9] Of course, not everyone believes that Plaintiff's contributions benefited ANSI at all, as one Assessor commented, "Jordan, please stop writing to me and the group of assessors. I want you to know that should it come to legal action, I will gladly testify on ANSI's behalf that your contribution to the three stages of ANSI training are worth nothing, and that your intrusive and unwanted emails are costly to ANSI and a distraction from our attention as assessors." Dep. 64; Puma Decl., Ex. F.

17

**F.      Even Before *Glatt*, District Courts In This Circuit Rejected Attempts To Conditionally Certify Similar Misclassification Claims Absent Common Proof.**

Given the highly individualized nature of the FLSA claims and defenses, even before *Glatt*, district courts in the Second Circuit denied conditional certification of FLSA contractor misclassification claims absent common evidence, like here.  *Levinson*, 2003 WL 22533428, at *1-2 (denying conditional certification because plaintiffs "failed to demonstrate that the putative members of the collective action are similarly situated" where plaintiffs merely alleged "a company-wide policy of misclassifying guides as independent contractors" but, like here, did not provide factual support beyond their own individual circumstances); *Prizmic v. Armour, Inc.,* No. 05- 2503, 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying conditional certification where, despite the fact that "Defendants allege that plaintiff was an independent contractor," plaintiff like here did not submit "any specific facts concerning his employment connecting his situation to others that he claims are similarly situated"); *Bamgbose v. Delta-T Grp., Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (denying conditional certification of contractor misclassification claims in the absence of common proof).[10]

On the other hand, Plaintiff's Motion does not cite any decision where any court – let alone a court in the Second Circuit – has granted a motion for conditional certification in a contractor misclassification case.  If Plaintiff tries to correct that obvious flaw in a reply brief, the Court should disregard his arguments.  *See supra* at 2 n.1.  And even if Plaintiff had cited such authority, we are

---

[10] *See also Vargas v. HSBC Bank USA, N.A.*, No. 11-7887, 2012 WL 10235792, at *4 (S.D.N.Y. Aug. 9, 2012) (denying conditional certification where declarations from putative collective action members showed they had "very different understandings of their own job duties and spend their time on the job doing very different things" than the plaintiff); *Ahmed v. T.J. Maxx Corp.*, No. 10-3609, 2015 WL 2189959, at *7-15 (E.D.N.Y. May 11, 2015) (refusing to set aside order denying conditional certification of a nationwide collective action of assistant managers due to lack of common proof and testimony showing AMs performed different duties relevant to the executive exemption and exercised varying discretion); *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) ("*Guillen II*") (denying renewed motion for conditional certification due to lack of common proof that AMs performed primarily non-exempt work).

not aware of any such decision in which a Court certified a contractor misclassification collective action based on mere conjecture, which is all Plaintiff offers here for anyone other than himself.

### G.   Plaintiff Has Failed To Meet His Burden To Establish That Assessors Are Similarly Situated To Him And Each Other.

Plaintiff has not come close to meeting his burden to show that he is similarly situated to hundreds of others he seeks to represent, particularly Assessors that have been qualified by ANSI to conduct assessments, because he admits that he lacks any knowledge of any relevant aspect of their relationship with ANSI.  Plaintiff does not have a shred of common proof that Assessors should be classified as employees, and he admits no such common proof exists.  And Assessorss' declarations confirm critical aspects of their relationship with ANSI that support in varying ways their proper classification as independent contractors.  *See Meyer,* 607 Fed. App'x at 123 (affirming denial of conditional certification where "plaintiffs are highly skilled workers who exercise a high degree of independent initiative and control . . . worked at their own convenience, were free to engage in other employment, did not receive fringe benefits . . . were not on defendant's payroll[, and] also generally claimed independent contractor status on their income tax returns.").

#### 1.   *Plaintiff's argument that classification alone warrants conditional certification must be rejected under Glatt.*

Plaintiff suggests the mere claimed fact that Assessors are uniformly classified as contractors is sufficient for conditional certification.  MOL at p. 2 ("ANSI requires all Assessors to execute the same or similar Assessor Agreement[s] and classifies all Assessors as independent contractors.").  Plaintiff admitted at his deposition that he in fact has no idea what agreement, if any, other Assessors have signed.  Dep. 188.  That can be the end of the analysis.  Regardless, *Glatt* sounded the death knell for this argument.  The Second Circuit held that the unpaid interns in the proposed collective action were not similarly situated despite the fact that they uniformly were classified as non-employees and not paid.  *Glatt,* 791 F.3d at 388; *Myers*, 624 F.3d at 550-51.  The

19

Eastern District of New York's recent analysis in *Ahmed* is also instructive.  2015 WL 2189959, at

*7-15.  In approving the magistrate judge's order denying conditional certification, the court

followed the long line of authority in the Second Circuit holding that "[t]he 'mere classification of a

group of employees . . . is not by itself sufficient to constitute the necessary evidence of a common

policy, plan or practice that renders all putative class members as 'similarly situated' for § 216(b)

purposes.'"  *Ahmed,* 2015 WL 2189959 at *7 (quoting *Jenkins*, 853 F. Supp. 2d at 323).[11]

## 2.      *Plaintiff offers no "common proof" of his bare assertions that all Assessors should be classified as employees.*

In support of his Motion, Plaintiff submits a statement of facts just over two pages long and

attaches purportedly "common" documents allegedly showing why Assessors are actually

employees of ANSI.  None of these documents support conditional certification.  First, Plaintiff

attaches his Assessor Agreement, which as discussed above, Plaintiff cannot show was signed by

any other Assessor.  Warman Decl. ¶ 2, Ex. 1; Dep. 188.

Second, Plaintiff curiously attaches a compilation of external postings by ANSI looking for

a contractor to perform assessment services.  Warman Decl. ¶ 4, Exs. 2-4. But these postings also

do not constitute "common proof" that Assessors uniformly should be classified as employees and

accordingly paid for their attendance at training sessions.  As Plaintiff acknowledged during his

deposition, he has no personal knowledge of where and how Assessors perform contract work for

ANSI, how Assessors are compensated, what alleged ANSI policies and procedures (if any) apply

to Assessors who contract with ANSI, or what instructions (if any) are given to any Assessors as

alleged "supervision."  Dep. 29-30, 151, 154, 188, 194, 232-237.  Furthermore, actual Assessors

have testified to facts that support that they had an independent contractor relationship with ANSI.

---

[11] *Accord Ikikhueme v. CulinArt, Inc.*, No. 13-0293, 2013 WL 2395020, at *2-3 (S.D.N.Y. Jun. 3, 2013)
(same); *Khanv. Airport Mgmt. Servs., LLC,* No. 10-7735, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011)
(same); *Guillen II,* 750 F. Supp. 2d at 476 (same); *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-8820, 2011
WL 2693712, at *4 (S.D.N.Y. July 11, 2011) (same).

A few project postings plainly cannot constitute "common proof" that all Assessors should be classified as employees.  *See, e.g., Guillen I,* 750 F. Supp. 2d at 476-80 (denying conditional certification where plaintiff and four declarants claimed that – contrary to the job description for the Assistant Manager position – they performed primarily non-exempt work, finding this evidence was "extremely thin" and rejecting evidence of "standardized operational practices" and "standardized employment policies" as not showing the duties of other AMs).

Third, Plaintiff attaches a collection of emails and documents concerning training sessions during *his own evaluation process* that he contends support his claim that all Assessors should be classified as employees and paid for their time attending training sessions.  However, the documents he attaches are nothing more than emails communicating logistics ("Once you confirm your availability I will provide a more detailed e-mail outlining instructions for transportation and accommodations" – Exs. 6-9), emails attaching documents to be used at training (Ex. 10), and emails attaching the agenda for training sessions ("8:30-9:00 am – Breakfast" - Ex. 11).  Most significant, these documents pertain only to him and others who participated in his particular training sessions about two years ago.  And when compared to the Declarations submitted by actual Assessors in this action, it is clear that these documents are wholly irrelevant for purposes of determining the type of project work Assessors performed for ANSI.

In *Ahmed*, the court rejected the plaintiff's contention that common corporate documents provided common proof supporting his claim, even when (unlike here) they actually related to job duties.  It explained that those documents "cannot plausibly be read to suggest that the Defendants subjected ASMs to a common policy encouraging them to perform primarily non-management work."  *Ahmed.* 2015 WL 2189959 at *8; *see also Guillen II*, 841 F. Supp. 2d at 801.  Plaintiff's purported "common proof" relating to scheduling for training similarly has no bearing on the issues material to the independent contractor/employee analysis and is insufficient to satisfy Plaintiff's

21

burden.  *Glatt*, 2015 WL 4033018, at 386 (purportedly common proof insufficient because it had no

bearing on the material issues under the primary beneficiary test); *Myers*, 624 F.3d at 550-51.

For all of these reasons, Plaintiff has not produced anything resembling "common proof"

that the Assessors uniformly were employees rather than contractors and, moreover, that they were

entitled to compensation for training that primarily benefited them in a variety of ways.  To the

contrary, Plaintiff has admitted that he has no "common proof," and the only way to find out the

nature of an Assessor's relationship with ANSI is to ***ask each Assessor individually***.  Dep. 258-259.

Under *Glatt*, Plaintiff's Motion should be denied for lack of common proof.[12]

### 3.       *Plaintiff and actual Assessors are not similarly situated.*

Contrary to Plaintiff's unsupported assertions that he held a "similar position" to Assessors

and that he and ANSI Assessors are similarly situated, it is undisputed that Plaintiff never even

became an Assessor.  Furthermore, Plaintiff admitted that he only thinks Assessors are similarly

situated because, based on his "interpretation" of the contract he signed, it is "more than likely" that

all Assessors were treated the same.  Dep. 239-241.  In other words, Plaintiff's theory is premised

on mere speculation.  And the declarations here from actual putative collective action members

establish conclusively that Plaintiff is not similarly situated to those he seeks to represent.  In sum,

the declaration and deposition testimony of Plaintiff alone cannot satisfy his burden at this stage.

*Myers*, 624 F.3d at 555; *Glatt*, 2015 WL 4033018, at *10; *see also, e.g., Ikikhueme*, 2013 WL

---

[12] The clear lack of common proof distinguishes this case from the limited decisions Plaintiff cites.  MOL 6-8.  For example, Plaintiff cites to *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-5119, 2014 WL 1998236 (S.D.N.Y. May 13, 2014), for the proposition that "declarative statements alone, at the notice stage, were sufficient to establish a factual nexus between plaintiffs and the other waitresses and dancers who worked at defendants' restaurants."  Here, however, Plaintiff offers no declarations from others and his own declarative statements are essentially that he has no idea how Assessors are paid, how Assessors conduct assessments, which polices and procedures apply (if any), and what information ANSI communicates to Assessors regarding the completion of assessments.  Moreover, in *Sanchez*, the plaintiffs actually worked as waitresses at the restaurant and, therefore, had "personal experiences" upon which to base their statements.  *Id.* at *2.  Plaintiff, in contrast, never even became an Assessor.

2395020, at *2-3 (denying conditional certification motion premised only on a plaintiff's personal declaration containing "unsupported assertions" regarding other employees).

### H.   If This Court Permits Notice, Which It Should Not, Notice Should Be Limited To Assessor-Candidates, Like Plaintiff, Who Never Became Assessors.

Plaintiff candidly admits that it is a "very different experience" to be an Assessor-Candidate that attends training and is ***never accepted*** as Assessor, in contrast to being an Assessor-Candidate who ***is accepted*** as an Assessor and thus goes on to charge $700-$900 per day to perform project work.  Dep. 284.  Indeed, with respect to the employee/contractor question, the declarants supporting this opposition acknowledge that the training is all just part of the deal they struck with ANSI as contractors to allow them to be paid these substantial sums.  Rops Decl. ¶ 12; Miller Decl. ¶ 7; Dardick Decl. ¶ 10; Mishra Decl. ¶ 8.  With respect to those who actually became Assessors, as detailed above, Plaintiff has no personal knowledge of their relationships with ANSI.  And with respect to the alternative individualized question of who is the primary beneficiary of the training, the claims of those who never became Assessors are entirely unlike the claims of those who were accepted by ANSI.  Specifically, if a candidate never even becomes an Assessor then the training provided at ANSI's expense, including all travel expenses, never actually benefits ANSI in any way given that the candidate never performs project work for ANSI.  To the extent that Plaintiff disputes this because he claims he participated in a "working group" during training that allegedly benefitted ANSI, his claim is unique given that he has no knowledge that other candidates or Assessors outside of his small group ever did so.  Dep. 265.  In any event, he has no idea whether anyone at ANSI ever actually used anything generated during that "working group."  Dep. 44-45.

For all these reasons, if any notice is sent at all (which it should not be), it should be limited ***only to the unique small group of Assessor-Candidates who, like Plaintiff, were not accepted by ANSI*** following the evaluation and thus never received the significant resulting financial benefits enjoyed by

23

those who became Assessors.  *See, e.g., Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 445-6 (S.D.N.Y. 2013) (Maas, J.) (refusing to permit employees in different jobs to join the class because plaintiff conceded that the non-kitchen employees were paid in a different manner and, therefore, the court found that they were not sufficiently similar); *Hallissey v. Am. Online, Inc.*, 99-cv-3785, 2008 WL 456112, at *3 (S.D.N.Y. Feb. 19, 2008) (restricting the class definition from unpaid volunteers generally to only those people that participated in the company's specific community leader volunteer program).  *See also Anglada v. Linens 'N Things, Inc.*, No. 06-12901, 2007 WL 1552511, *5-6 (S.D.N.Y. May 20, 2007) (McMahon, J.) (limiting FLSA certification to those working in either of the two stores in which the plaintiff worked because he failed to submit any "supporting declarations or affidavits from other similarly situated employees who are located at any other LNT store, and avers no personal knowledge of the policies or practices of any LNT store other than the two stores in which he worked"); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 520-21 (D. Md. 2000) (notice limited to one facility); *Bernard v. Household Intern., Inc.*, 231 F. Supp. 2d 433, 436-37 (E.D. Va. 2002) (finding nationwide notice inappropriate and limiting notice to defendant's two locations in Virginia, which were identified in the declarations provided by plaintiffs); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 (M.D. Ala. 2002) (limiting proposed notice to only those who worked under three supervisors in Alabama).

## I.      If Any Notice Is Permitted, It Should Be Fair And Accurate.

If the Court does conditionally certify a collective action (which it should not), the parties should meet and confer to devise a notice.  *See, e.g., Colozzi*, 595 F. Supp. 2d at 211 (rejecting plaintiff's notice and directing the parties to negotiate a notice).  Plaintiff's proposed notice is improper for many reasons, including, for example:

- The notice is one-sided and misleading, as it does not contain any language regarding the Court's impartiality and it creates the impression that the litigation itself is Court-endorsed.  The Notice should contain a prominent statement on the first page regarding the Court's neutrality, and the

24

case caption should not appear on the notice.  *See, e.g., Knispel v. Chrysler Group LLC*, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012); *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08-2746, 2009 WL 140126, at *10 (N.D. Ill. Jan. 20, 2009).

- The notice fails to advise the recipients of the full extent of their likely role in the case, including the possibility that they may be required to participate in written discovery and/or travel to the Southern District of New York to be deposed and/or participate in a trial if they opt in and that they may be required to pay certain costs if they do not prevail.  *See, e.g., Jancich v. Stonegate Mortg. Corp.*, No. 11-2602, 2012 WL 380287, at *3-4 (D. Kan. Feb. 6, 2012).

- Providing phone numbers for all putative collective action members is unwarranted due to privacy concerns.  *See, e.g., Colozzi*, 595 F. Supp. 2d at 210 ("plaintiffs have no need for the additional inherently private information sought, including e-mail addresses, telephone numbers . . .").  Moreover, turning over contact information to Plaintiff's counsel (rather than having a third-party administrator distribute notice) would allow them to circumvent the Court-approved notice and harass individuals into joining the case.  This would only continue Plaintiff's prior e-mail harassment of other Assessor-Candidates.

If the parties cannot agree on any notice, they should submit their separate proposals for the Court's decision. *See Hintergerger v. Catholic Health Sys.*, No. 08- 3805, 2009 WL 3464134, at *11 (W.D.N.Y. Oct. 21, 2009) (ordering the parties to confer regarding a proposed joint notice, or to submit competing versions of the proposed notice if unable to agree).

## V.   **CONCLUSION**

Plaintiff has not even come close to meeting his burden under *Myers* and *Glatt* to prove that he and hundreds of potential opt-in plaintiffs are similarly situated such that collective adjudication of their claims is efficient and appropriate.  The record is devoid of any common proof supporting Plaintiff's theory that all Assessors were improperly classified as independent contractors.  Plaintiff admits that the only way to find out is to ask each Assessor.  Nor is there any record evidence that the "primary beneficiary" question could be collectively adjudicated for all putative collective action members to establish that their training should be paid even if they were misclassified as contractors.  For these reasons, ANSI respectfully requests that the Court deny Plaintiff's Motion in its entirety or at least limit any collective action and notice to only failed Assessor-Candidates like Plaintiff.

DB1/ 85588079.8

Dated: December 22, 2015            MORGAN LEWIS & BOCKIUS, LLP

*/s/ Michael J. Puma*

Michael J. Puma
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:  +1.215.963.5000
Facsimile:  +1.215.963.5001
mpuma@morganlewis.com

Ashley Hale
101 Park Avenue
New York, NY  10178-0060
Telephone:  +1.212.309.6000
Facsimile:  +1.212.309.6001
ahale@morganlewis.com

26

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 22, 2015, I filed the foregoing Opposition to Plaintiff's Motion for Conditional Collective Action Certification and Notice Pursuant to 29 U.S.C. § 216(b), together with the Declaration of Michael J. Puma in Opposition to Plaintiff's Motion (and Exhibits A-J thereto), electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Alisa Ann Martin, Esq.
Amartin Law, PC
600 West Broadway, Suite 700
San Diego, CA 92101
Phone: 619-308-6880
Fax: 619-308-6881
Email: alisa@amartinlaw.com

Todd Seth Garber, Esq.
Finkelstein Blankinship, Frei- Pearson & Garber, LLP
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
Phone: 914-298-3281
Fax: 914-824-1561
Email: tgarber@fbfglaw.com

Travis K. Jang Busby, Esq.
San Diego County Law Offices
2173 Salk Avenue, Suite 250
Carlsbad, California 92011
Phone: 760-206-3566
Fax: 760-888-3575
Email: tjbusby@sdlawoffices.com

*Attorneys for Plaintiff*


/s/  Michael J. Puma
Michael J. Puma

DB1/ 85588079.8