UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

|  |  |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED: __6/27/16__ | |

JORDAN WARMAN,                                                :

                              Plaintiff,              :         **MEMORANDUM<br>DECISION AND ORDER**

         -against-                                          :

                                                            15cv5486-RA-FM

AMERICAN NATIONAL STANDARDS                   :
INSTITUTE,

                                                     :

                         Defendant.

------------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

        Plaintiff Jordan Warman ("Warman") brings this putative collective action on behalf of himself and other persons alleged to be similarly situated. He seeks to recover, inter alia, unpaid minimum wages and overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, et seq. (See ECF No. 15 (First Amended Complaint ("FAC"))).

        Warman has now moved for: (1) conditional certification of a collective action under the FLSA; (2) court-facilitated notice of the action to all potential opt-in plaintiffs; and (3) expedited disclosure of the potential plaintiffs' contact information.

(ECF No. 28 ("Pl.'s Mem.") at 1).  For the reasons set forth below, the motion, (ECF No. 27), is denied.[1]

I.   Background[2]

   A.   Relevant Facts

Defendant American National Standards Institute ("ANSI") is a not-for-profit corporation with its principal place of business in New York.  (FAC ¶ 9).  ANSI "oversees the creation, promulgation and use of thousands of norms and guidelines that impact businesses in numerous industries," (id.), in furtherance of a United States "voluntary standardization and conformity assessment system," (Pl.'s Mem. at 2).

As part of its mission, ANSI hires and certifies individuals ("Assessors") to "carry out specific conformity assessment tasks."  (See Warman Decl. ¶ 10; Opp. Mem at 5).  According to Warman, ANSI requires all Assessors, and individuals seeking to become Assessors ("Candidates"), to execute an agreement, pursuant to which they are classified as independent contractors.  (Warman Decl. ¶ 4).  Further, the Assessors all

---

[1]   Motions for conditional certification of a collective action under the FLSA are non-dispositive.  Bijoux v. Amerigroup New York, LLC, No. 14 Civ. 3891 (RJD) (VVP), 2015 WL 5444944, at *1 (E.D.N.Y. Sept. 15, 2015).

[2]   Citations in this Memorandum Decision and Order refer to the following:  Pl.'s Mem., Ex. C (Decl. of Jordan Warman, dated Nov. 2, 2015 ("Warman Decl.")); id., Ex. 1 ("Assessor Agreement"); id., Ex. 5 (email from ANSI Employee to Warman, dated Aug. 8, 2013 ("August 8 Email")); id., Ex. 13 (email from ANSI Employee to Warman, dated Nov. 15, 2013 ("November 15 Email")); ECF No. 37 (Am. Not. of Mot.); ECF No. 39 (Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Conditional Collective Action Cert. ("Opp. Mem.")); ECF No. 40 (Decl. of Michael J. Puma, Esq., dated Dec. 22, 2015 ("Puma Decl.")); id., Ex. A (Tr. of Warman Dep., taken on Dec. 12, 2015 ("Warman Tr.")); id., Ex. E (Decl. of Akshay Mishra, P.E., dated Dec. 16, 2015 ("Mishra Decl.")); ECF No. 45 (Pl.'s Reply Mem. ("Reply")).

must participate in annual training sessions ("Annual Training"), during which "[A]ssessors . . . work[] to arrive at common interpretations of newly introduced . . . standards." (Id. ¶¶ 6, 9). ANSI does not pay Assessors for the time they spend at such Annual Training. (Id. ¶ 11).

Prior to being certified as an Assessor, Candidates also must participate in training, which includes their attendance at in-class training sessions ("New Assessor Training") and observation of an onsite assessment ("Assessment"). (Id. ¶¶ 6, 7; August 8 Email (explaining that "all [Candidates] would be required to participate as an observer on an [Assessment]" after the New Assessor Training)). Warman "believe[s]" that ANSI also requires Candidates to attend Annual Training if it occurs during their candidacy. (Warman Decl. ¶ 9; November 15 Email (informing Warman that he must attend the 2014 Annual Training)). Warman further alleges that ANSI does not compensate any Candidates for time spent attending training sessions. (Warman Decl. ¶ 11).

Around June 2013, ANSI accepted Warman as a Candidate for its "17024 program."[3] (Id. ¶¶ 2, 8). On October 23, 2013, Warman signed the Assessor Agreement, which classified him as an independent contractor for ANSI. (Assessor Agreement ¶ 7). During his time as a Candidate, ANSI required him to attend New Assessor Training in Washington, D.C., from October 29 to November 1, 2013, the 2014 Annual Training in

---

[3] The 17024 program evidently is related to the accreditation of personnel certification agencies.
See https://www.ansi.org/accreditation/credentialing/personnel-certification/Default.aspx (last visited June 27, 2016).

Baltimore, Maryland, from January 21 through 23, 2014, and a two-day Assessment in New Jersey in May 2014. (Warman Decl. ¶ 6). According to Warman, each training session required substantial travel; he also had to perform work or study training materials before, during, and after the sessions. (FAC ¶ 15(a)-(c)). For example, Warman allegedly worked between fifty and fifty-five hours during the week of October 29, 2013. (Id. ¶ 37). ANSI did not compensate Warman for this or any other time he expended in relation to the training sessions. (Warman Decl. ¶ 11). Ultimately, ANSI failed to certify Warman as an Assessor, and never "pa[id] him for any of his training hours or any other work-related hours." (FAC ¶ 18).

B.   Procedural History

On November 4, 2015, Warman moved, inter alia, for conditional certification of a collective action under the FLSA. (ECF No. 27). On December 22, 2015, ANSI timely filed its papers in opposition to Warman's motion, (see ECF No. 26; Opp. Mem.), and on January 12, 2016, Warman filed his reply, (Reply). Thereafter, on March 17, 2016, the Court heard oral argument on the motion. (See ECF No. 46). The motion consequently is fully submitted.

II.   Legal Standard

The FLSA establishes a minimum hourly wage that employers must pay their employees and requires employers to pay overtime wages, at a rate one and one-half times an employee's normal hourly rate, for any hours worked in excess of forty hours in a single week. 29 U.S.C. §§ 206, 207.

The FLSA authorizes an aggrieved employee to maintain a collective action on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Such an action is not subject to the class action requirements of Rule 23 of the Federal Rules of Civil Procedure. Davis v. Lenox Hill Hosp., No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 3, 2004). Accordingly, there need not be a showing of numerosity, commonality, typicality, or adequacy of representation. Id. To bring a collective action, a plaintiff first must show that the defendants' pay practices violated the FLSA. 29 U.S.C. § 216(b). Plaintiffs who wish to participate in that collective action then must "opt in" by consenting in writing to join the suit and filing their consents with the court in which the action was brought. Id. In keeping with the FLSA's "broad remedial purpose," district courts may facilitate notice to other potential similarly-situated employees to inform them of the opportunity to opt in. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70, 173 (1989); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978).

Courts in this Circuit employ a two-step process to decide whether to certify a collective action under Section 216(b). See Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010); Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007). At the first step, the court makes an initial determination as to whether other potential plaintiffs are situated similarly to the named plaintiff with respect to the alleged FLSA violations. Myers, 624 F.3d at 555. At the second step, following

discovery, the court reconsiders its preliminary determination as to whether the opt-ins are similarly situated. Id.

Although the FLSA itself does not define the term "similarly situated," courts require that there be a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." Davis, 2004 WL 1926086, at *7 (internal quotation marks omitted). The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA. Myers, 624 F.3d at 555.

The term "conditional certification" is actually something of a misnomer. See Morangelli v. Chemed Corp., 275 F.R.D. 99, 104 n.1 (E.D.N.Y. 2011), amended on reconsideration (July 8, 2011). At this first stage, all a court really is doing is facilitating the sending of notice to potential class members. Myers, 624 F.3d at 555. Accordingly, because this discretionary determination takes place early in the litigation and often before discovery has begun, a named plaintiff need make only a "modest factual showing" that he and other potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Id. (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, D.J.)). Plaintiffs thus may satisfy their burden by relying on "their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members." Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Indeed, the burden

is so low that even one or two declarations establishing the common plan may suffice. See, e.g., Hernandez v. Bare Burger Dio Inc., No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (conditional certification granted based solely on named plaintiff's declaration). Unsupported assertions in the pleadings, however, cannot satisfy a plaintiff's burden. Myers, 624 F.3d at 555.

When there are ambiguities in the papers seeking collective action status, the court must "draw all inferences in favor of the [p]laintiff" at the preliminary certification stage. Mendoza v. Ashiya Sushi 5, Inc., No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (quoting Jenkins v. TJX Cos. Inc., 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)). Thus, at this stage, the court may not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch, 491 F. Supp. 2d at 368; see also Hoffmann-La Roche, 493 U.S. at 174 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). Nor should the court "weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Lynch, 491 F. Supp. 2d at 368. The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that he and other employees were victims of a common compensation policy that violated the FLSA. Id.

Once notice has been sent to the potential opt-in plaintiffs and discovery closes, the court may entertain a defendant's motion to decertify the action. This second stage of the process involves a "more stringent factual determination," id., which requires

the court, "on a fuller record, [to] determine whether a [collective action] may go forward [because] the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," Myers, 624 F.3d at 555. If the opt-in plaintiffs are revealed not to be similarly situated, the court may decertify the class and dismiss the opt-in plaintiffs' claims without prejudice. Id.

III.  Conditional Collective Action Certification

Warman seeks conditional certification on behalf of a potentially worldwide class "of all persons who [ANSI] required to attend its New Assessor Training, Annual . . . Training, or any other type of training, including [Assessments], . . . at any time from July 13, 2012 to present." (Am. Not. of Mot. ¶ 1). This class is divisible into two subclasses: (A) Candidates who participated in training sessions (whether or not they ultimately became Assessors); and (B) Assessors who participated in Annual Training. Each will be considered in turn to determine whether Warman has made the requisite "modest factual showing" that he is situated similarly to the potential plaintiffs within the subclass. Myers, 624 F.3d at 555.

A.  Candidates who Participated in Training Sessions

Warman claims that ANSI requires all Candidates to participate in training sessions and does not compensate them because it considers Candidates exempt under the FLSA. (Warman Decl. ¶¶ 4, 7, 11). In his view, this policy constitutes a common employment practice that violates the FLSA. (Pl.'s Mem. at 6).

Warman likely has made a "modest factual showing" that ANSI has a common practice of treating Candidates as exempt under the FLSA. (See Assessor Agreement (classifying Warman as an independent contractor)).[4] This, however, does not end the inquiry. "As numerous courts in this Circuit have held, 'the mere classification of a group of employees . . . as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as similarly situated.'" Jenkins, 853 F. Supp. 2d at 323 (quoting Vasquez v. Vitamin Shoppe Indus., Inc., No. 10 Civ. 8820 (LTS) (THK), 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011)) (collecting cases).

The critical question is whether the policy of classifying a group of employees as exempt violates the FLSA. Myers, 624 F.3d at 555. Accordingly, Warman has the burden, however modest, of establishing that there is "common proof" that ANSI misclassified – rather than merely classified – employees as exempt. Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2016) (vacating the district court's conditional certification of a putative class of unpaid interns because the "common proof" "address[ed] only some of the relevant factors" in determining whether the interns were properly considered exempt); see also Fraticelli v. MSG Holdings, L.P., No. 13 Civ. 6518 (JMF), 2014 WL 1807105, at *2 (S.D.N.Y. May 7, 2014) (denying conditional certification because the putative classes' "experiences appear[ed] to vary greatly . . . in

---

[4] The Assessor Agreement appears to be an ANSI standard form agreement.

ways that [were] highly relevant" to the determination of whether they were appropriately classified as exempt).

As ANSI correctly observes, (Opp. Mem. at 14-17), whether it was legally obligated to pay Candidates for their time depends on whether they were "employees" under the FLSA, or merely "trainees,"[5] see Walling v. Portland Terminal Co., 330 U.S. 148 (1947) (holding that trainees are exempt under the FLSA). This issue, which will come into play at the merits stage, will likely require the Court to consider the "economic reality" of the relationship between the Candidates and ANSI, and who was the "primary beneficiary of the relationship." See Glatt, 811 F.3d at 536 (adopting the primary beneficiary test for the intern exemption); see also Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961) ("'[E]conomic reality' rather than 'technical concepts' is to be the test of employment" under the FLSA). Any such inquiry would necessarily be "highly context-specific" and require consideration of the "totality of circumstances." Glatt, 811 F.3d at 535, 539. Although the Second Circuit has yet to enumerate the specific factors that should be considered in making this determination, Supreme Court and Second Circuit precedent suggests the relevant factors. In particular, the Court likely would need to consider (among other factors) whether (1) the Candidates replace regular employees, (2) the Candidates have an expectation of compensation, (3) the Candidates' training sessions are similar to ones offered in vocational school, and (4) ANSI received

---

[5] As ANSI also observes, (Opp. Mem. at 16-17), even if the Candidates are not properly considered trainees, they still may be exempt independent contractors.

an immediate advantage from the Candidates' work.  See id. at 535 (citing Portland Terminal Co., 330 U.S. at 149-153).

Warman has not met even the low burden of demonstrating that the consideration of these factors in relation to the Candidates subclass will be based on "common proof." Id. at 540.  As Warman acknowledges, for example, a key consideration in his individual FLSA claim will be his participation in the 2014 Annual Training.  (FAC ¶ 17 ("ANSI derived a material benefit from Warman's work, and in particular, from the work during the [2014 Annual Training]," where Warman "worked to collaboratively generate shared interpretations of [ANSI] standards," "essential knowledge for ANSI's continued activities."); Reply at 4 (ANSI's "key business objective is to promote and facilitate . . . consensus standards.")).  Indeed, Warman's attendance at the Annual Training was a major component of his individual training program and appears to be the primary driver of his legal theory.  (See FAC ¶¶ 15(b), 17).  Warman has presented limited evidence, however, that other Candidates were required to attend Annual Training sessions.  Indeed, other than Warman's claim that the twelve Candidates in his New Assessor Training were told that they had to attend the 2014 Annual Training, (see Warman Decl. ¶ 9; id., Ex. 8;), Warman alleges only that he "believe[s]" that ANSI requires all Candidates to attend Annual Training if it occurs during their candidacy, (Warman Decl. ¶ 9).[6]  This speculation, unsupported by any

---

[6] Warman also relies on the November 15 Email, in which ANSI informed him that he was required to attend the 2014 Annual Training.  However, that Email was addressed to him personally.  (See November 15 Email).

evidence, is entitled to no weight.  See Myers, 624 F.3d at 555.  Nor does Warman's allegation allow the Court to determine whether any other Candidates' training periods coincided with Annual Training sessions.  Because Warman's participation at the Annual Training goes to the very heart of his claim, a potentially worldwide collective action that includes Candidates who were not required to participate in Annual Training would plainly be overbroad.

       Moreover, even Candidates who were required to attend mulitple training sessions may have had materially different experiences.  Warman was a "17024 program" Candidate, for example.  (Warman Decl. ¶ 8).  Although it is not clear how many varying types of expertise Assessors have, it appears there are many categories which entail significantly different roles.  (See, e.g., id., Ex. 3 (Job Posting for Greenhouse Gas Assessor); Mishra Decl. (stating that he is an electrical engineer and a "Guide 65," "17020," and "17025" Assessor)).  Because Warman's factual evidence is mostly limited to his personal experience several years ago during the 17024 program Candidates' training program, (see, e.g., Warman Decl., Ex. 11 (Agenda of 17024 Program Candidates' New Assessor Training)), there is limited evidence that ANSI's numerous training programs involve similar materials or requirements.  Again, these differences will likely be meaningful in determining whether candidates were properly classified as trainees.

       In sum, the Candidates' "experiences appear to vary greatly . . . in ways that are highly relevant" to the determination of whether they are properly considered trainees.

Fraticelli, 2014 WL 1807105, at *2. Consequently, Warman has failed to meet the burden of demonstrating that he and all other Candidates who participated in training sessions were similarly situated.

  B.  Assessors Who Have Participated in Annual Trainings

Warman also seeks conditional certification on behalf of all Assessors who have participated in Annual Training. (See Am. Not. of Mot. ¶ 1). Warman argues that the Assessors and Candidates are all uniformly misclassified as independent contractors by ANSI and, therefore, similarly situated. (Warman Decl. ¶¶ 4-5; Assessor Agreement ¶ 7).

Despite this assertion, there is simply an insufficient "factual nexus" between Warman, a mere Candidate, and full-fledged Assessors who have participated in Annual Training. See Davis, 2004 WL 1926086, at *7. Warman never was certified as an Assessor, never undertook an Assessment on his own, and had a relationship with ANSI that was limited to his short candidacy. (FAC ¶ 18). In contrast, many of the Assessors Warman claims are similarly situated have had a long-term relationship with ANSI conducting Assessments in various contexts. (See Puma Decl., Exs. B-D; Mishra Decl.). Accordingly, the determination of whether Warman or any Assessors who may choose to opt in to the lawsuit were misclassified as independent contractors will necessarily rely on wholly different facts. See Meyer v. U.S. Tennis Ass'n, 607 F. App'x 121 (2d Cir. 2015) (noting that the factors courts must consider when determining if someone is an independent contractor include "the degree of control exercised by the

13

employer" and the "degree of skill and independent initiative required to perform the work") (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988)). The legal issues that will arise at the merits stage with respect to Warman and the Assessors also will vary significantly. Indeed, as noted above, the principal issue regarding Warman will be whether he was a trainee. With respect to the Assessors, however, the primary consideration will be whether they were misclassified as independent contractors.

In sum, even if certain Assessors were to opt in to this suit to pursue FLSA claims against ANSI, the factual and legal theories under which they would proceed would be entirely different than those pursued by Warman. Warman therefore has not demonstrated that he is situated similarly to Assessors who have attended Annual Training.

IV.     Conclusion

For the foregoing reasons, Warman's motion for conditional collective action certification and related relief, (ECF No. 27), is denied.

SO ORDERED.

Dated:      New York, New York
            June 27, 2016

_____
FRANK MAAS
United States Magistrate Judge

Copies to all counsel via ECF