UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/6/2016

JORDAN WARMAN, individually and on behalf of all others similarly situated,

                Plaintiff,

-v-

AMERICAN NATIONAL STANDARDS INSTITUTE, a 501(c)(3) organization,

                Defendant.

No. 15-CV-5486 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff Jordan Warman brings this putative class action pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendant American National Standards Institute ("ANSI") moves to dismiss the NYLL claims. Because Plaintiff never worked in New York, ANSI's motion is granted.

## BACKGROUND

Warman is a Canadian citizen who lives in Ontario, Canada. Am. Compl. ¶¶ 4, 8. ANSI is a not-for-profit corporation incorporated under the laws of New York and doing business in New York City and throughout the United States, including "oversee[ing] the creation, promulgation and use of thousands of norms and guidelines that impact businesses in numerous industries" and "accredit[ing] organizations that certify that products and/or personnel meet recognized standards." Id. ¶ 9. Warman alleges that "ANSI's alleged acts were authorized, directed or accomplished by its agents, officers, employees or representatives while actively engaged in the operation and management of its business." Id. ¶ 10.

In June 2013, ANSI accepted Warman as an Assessor Trainee, and, on October 22, 2013, required that he execute an "Assessor Agreement." *Id.* ¶¶ 11–12. The Agreement contains a choice-of-law provision, which provides that "[t]his Agreement shall be governed by the laws of the State of New York, exclusive of New York's conflict of interest rules." *Id.* ¶ 13. As an Assessor Trainee, Warman was required to travel and attend mandatory, multi-day training sessions in Washington D.C., Maryland, and New Jersey. *Id.* ¶ 15(a)–(c). He does not allege that he ever travelled to or worked in New York.

On July 14, 2015, Plaintiff filed a class action complaint seeking redress under the FLSA and NYLL for ANSI's failure to pay him for the time spent at, preparing for, and traveling to the mandatory trainings. On October 9, 2015, ANSI moved to dismiss Warman's NYLL claims.

## LEGAL STANDARD

ANSI files its motion to dismiss Warman's NYLL claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In order to survive a 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the same time, the Court does not accept legal conclusions, as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

Warman alleges that, after ANSI accepted him as an Assessor Trainee, it required him to attend training sessions in Washington D.C., Maryland, and New Jersey. He does not dispute that he never worked in, attended training sessions in, or entered New York State during the course of

2

his alleged employment with ANSI. Because NYLL is designed to protect only those who work in New York, Warman cannot state a claim under the statute.

"Under New York law, it is a settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it." *Magnuson v. Newman*, No. 10-CV-6211 (JMF), 2013 WL 5380387, at * 5 (S.D.N.Y. Sept. 25, 2013) (internal quotations omitted) (quoting *Goshen v. Mut. Life Ins. Co. of New York*, 730 N.Y.S.2d 46, 47 (App. Div. 2001)). As NYLL is silent on its extraterritorial application, courts in this district have held that it does not apply extraterritorially. *See O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) ("Nothing in the [NYLL] suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers." (internal citation omitted)); *Magnuson*, 2013 WL 5380387, at *5 (holding that, in light of the purpose of the statute and the presumption against extraterritoriality, "it follows that the statute does not apply to people who work outside of the State of New York"); *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06-CV-0134 (DAB), 2006 WL 2356157, at *20 (S.D.N.Y. Aug. 9, 2006) ("Given the lack of any clear intent to apply the New York law extraterritorially . . . Plaintiff may not pursue her labor law claims overseas."); *Hammell v. Paribas*, No. 90-CV-4799 (JSM), 1993 WL 426844, at *1 (S.D.N.Y. Oct. 22, 1993) ("New York Labor Law § 198(1–a) contains no clear statement of intended extraterratorial effect.").

These rulings are consistent with the stated purpose of the relevant provision of the statute: "Article 19 of the NYLL, which includes the minimum wage, overtime, and spread of hours provisions relevant to this case, begins with a 'Statement of Public Policy' section stating that it was enacted to address the fact that '[t]here are persons employed in some occupations *in the state*

3

*of New York* at wages insufficient to provide adequate maintenance to themselves and their families." *Magnuson*, 2013 WL 5380387, at *5 (emphasis and alteration in original) (quoting NYLL § 650 (McKinney)).

Warman raises three arguments in opposition to ANSI's motion, none of which are persuasive. First, Warman argues that "the doctrine of interest analysis dictates the application of [NYLL] because ANSI required Warman to attend training in multiple states" with conflicting labor laws. Pl.'s Opp. 4. This argument fails given that the relevant New York statute does not have extraterritorial reach.[1] Even if the interest analysis did apply, the outcome would be the same: the states where Warman attended training sessions have a greater interest in regulating the treatment of employees working in their states than New York, where Warman neither worked nor trained. *See, e.g., Fiske v. Church of St. Mary of the Angels*, 802 F. Supp. 872, 880 (W.D.N.Y. 1992) (holding that New York labor regulations governing worksite safety apply to a New York worksite, even though the plaintiff and employer were domiciled in New Jersey "[g]iven the New York legislature's strong interest in maintaining safety at work sites located within New York"); *Bierer v. Glaze, Inc.*, No. 05-CV-2459 (CPS), 2006 WL 2882569, at *8 (S.D.N.Y. Oct. 6, 2006) (holding NYLL applies to a plaintiff who resided and worked in New York even though the employer was a New Jersey company); *Melia v. Zenhire, Inc.*, 984 N.Y.S.2d 632 (Sup. Ct. 2013)

---

[1] The cases Warman cites, which apply interest analysis in the context of deciding which state's tort law applies, are inapposite. *See Grund v. Delaware Charter Guar. & Tr. Co.*, 788 F. Supp. 2d 226, 243 (S.D.N.Y. 2011) ("To determine which law applies in a tort action, New York courts apply an 'interest analysis,' under which the law of the jurisdiction with the greatest interest in the litigation applies."); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 375 (S.D.N.Y. 2011) ("[T]o resolve conflicts in tort cases, New York applies an 'interest analysis' . . . .") (internal citation omitted); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 192 (S.D.N.Y. 2006) ("Thus, to resolve conflicts in tort cases, New York applies an 'interest analysis' to identify the jurisdiction that has the greatest interest.") (internal citation omitted); *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S.2d 504, 514 (App. Div. 2013) ("In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied the litigation.") (internal citation omitted).

4

(holding that Massachusetts labor law applies to plaintiff who resided and performed work in Massachusetts).

Without citation, Warman counters that "it only makes sense that one central law should govern the Assessors' working conditions and privileges" "[g]iven that ANSI mandates training in at least three different states for short periods of time." Pl.'s Opp. 13. The plaintiff in *O'Neill v. Mermaid Touring*, 968 F. Supp. 2d 572 (S.D.N.Y. 2013), advanced a similar argument, contending that, as a New York domicile, she was entitled to the protection of NYLL because "her work throughout the country involved only temporary assignments." *Id.* at 578. Judge Gardephe rejected this claim, concluding that "[p]laintiff's reliance on residence or domicile is misplaced," because "the crucial issue is where the employee is 'laboring,' not where he or she is domiciled." 968 F. Supp 2d at 579. This logic applies with even more force here. Indeed, as Warman was never employed in or domiciled in New York, he has even less claim to its statutory protections.[2]

Second, Warman argues that NYLL applies because "the choice-of-law provision in ANSI's Assessor Agreement is sufficiently broad to apply to [NYLL] claims regarding unpaid wages." Pl.'s Opp. 8. The weight of authority, however, holds otherwise. While contractual choice-of-law provisions are valid and given full effect by New York law, *see Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996), New York courts construe such clauses more narrowly. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005) (noting "a reluctance on the part of New York courts to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action"). Accordingly, a choice-of law provision indicating only that an *agreement* will be governed by New York law will not bind the parties for non-contractual

---

[2] Plaintiff offers to amend his complaint to "plead that the laws in various states where ANSI held training conflict with each other." Pl.'s Opp. 8. Such an amendment, however, would be futile because whether or not the laws of the states in which Warman trained conflict does not alter the fact that NYLL does not apply extraterritorially.

causes of action. *See Krock*, 97 F.3d at 645; *Plymack v. Copley Pharm., Inc.*, No. 93-CV-2655 (KMW), 1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995); *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F. Supp. 210, 215 (S.D.N.Y.1984). The court in *Rice v. Scudder Kemper Investments, Inc.*, No. 01-CV-7078 (RLC), 2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003) *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d Cir. 2006), for example, held that a choice-of-law provision, which provided that "[t]he validity, interpretation, construction, and performance of this Agreement shall be governed by the law of the state of New York," was too narrow to apply non-contractual liability, and therefore did not confer jurisdiction for the plaintiff's New York Human Rights Law claim. *Id.* at *4 (alterations in original); *see also id.* ("[I]t is settled New York law that language such as this creates New York common law contractual claims but not statutory ones."). There, the court reasoned that, "[f]or the parties to be bound by New York law with regard to non-contractual causes of action, the choice-of-law provision would have had to include much broader language, indicating that any controversy 'arising out of or relating to' the agreement would be governed by the laws of New York." *Id.*[3]

Here, the Assessor Agreement's choice-of-law provision provides that "[t]his Agreement shall be governed by the laws of the State of New York." Like the provision in *Rice*, this choice-of-law clause applies only to claims sounding in contract and not statutory causes of action. *See Burnett v. Physicians' Online, Inc.*, No. 94-CV-2731 (TPG), 1997 WL 470136, at *12 (S.D.N.Y. Aug. 15, 1997) (holding that a general choice-of-law provision does not apply to claims arising out of state statutory law). Warman thus cannot state a claim under NYLL on the basis of the Assessor Agreement's choice-of-law provision.

---

[3] Although the court in *Levinson v. Primedia Inc.*, No. 02-CV-2222 (DAB), 2007 WL 2298406 (S.D.N.Y Aug. 9, 2007), held that a choice-of-law clause was "tantamount to an agreement to apply New York statutory law to a dispute about commissions owed under said contract," *id.* at *12, this Court finds the logic set forth in the cases above more persuasive.

6

Third, Warman argues that ANSI "impliedly consented" to the application of New York law in three ways: "by maintaining its headquarters in New York City, including a choice-of-law provision in its employment agreement, which requires the use of New York law, and . . . expressly relying on NYLL to defend against wage-and-hour claims." Pl.'s Opp. 14–16. Warman, however, does not point to any authority that these acts amount to implied consent, and neither of the two cases he cites support his position. In those cases—*Alter v. Bogoricin,* No. 97-CV-0662 (MBM), 1997 WL 691332, at *3 (S.D.N.Y. Nov. 6, 1997) and *Tehran-Berkeley Civil and Eviron. v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)—the parties had assumed in their briefing that New York law applied; the courts therefore concluded that the respective parties had consented to its application. Here, by contrast, ANSI moves to dismiss the NYLL claims on the very basis that such law cannot be applied to an employee who never worked in New York. ANSI, therefore, cannot be said to have consented to its application.

Moreover, public policy, comity, and common sense all counsel against the expansive implied consent doctrine Warman urges. If maintaining a New York headquarters constituted consent to the application of New York statutory law to all its employees—no matter their state of employment—it would swallow the presumption against extraterritoriality, incentivize forum shopping, and inevitably create conflicts with other states' labor laws. Nor would it be fair to construe the assertion of affirmative defenses as consent. Warman brought NYLL claims, and ANSI asserted defenses under the same law in the interest of preserving them should this motion fail. This does not amount to consent. For these reasons, as well as those stated above, Warman's final argument fails.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's NYLL claims is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 21.

SO ORDERED

Dated: July 6, 2016
       New York, New York

_____
Ronnie Abrams
United States District Judge